THE FIRESTONE TIRE & RUBBER COMPANY
*v.* SUPERVISOR OF ASSESSMENTS
OF WICOMICO COUNTY

[No. 213, September Term, 1974.]

*Decided June 26, 1975.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Sheldon B. Seidel* for appellant.

*Ward B. Coe, III, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

The issue in this case is whether the General Assembly, in enacting Maryland Code (1957, 1975 Repl. Vol.), Article 81, § 8 (7) (e), intended that a county could, by accepting an agreed payment in lieu of taxes from a private business leasing county-owned real property, exempt the private business from liability for property taxes.

Pursuant to the provisions of Code (1957, 1971 Repl. Vol.), Art. 41, secs. 266A-266I, Wicomico County and The Firestone Tire & Rubber Company entered into an agreement on March 31, 1971, which provided that the County would purchase a tract of land located in the City of Salisbury and would build on the tract a facility suitable for use by Firestone as an industrial plant. The agreement went on to provide that Firestone would lease the parcel and improvements from the County. The lease between Firestone and the County was signed on September 15, 1971, and the industrial plant was completed in the fall of 1971.

The March 31, 1971, agreement further provided that a semi-annual payment by Firestone to the County would "be the sole charge imposed on Firestone as and for and in lieu of all real estate taxes (state, county and city) . . . . In the event that such taxes shall be legally assessed against the Project or Firestone's interest therein, or if the County, Salisbury, or the State of Maryland shall impose any other taxes or assessments on the Project or Firestone's interest therein, (whether or not the validity of such assessment is contested by Firestone), Firestone's obligation to pay Pilot [*i.e.*, payment in lieu of taxes] . . . shall cease, and Firestone shall be under no obligation to pay that portion of the Pilot for the remainder of the term of the lease . . . ."

The Supervisor of Assessments for Wicomico County assessed the industrial site and building to Firestone for the

tax year 1972-73. Firestone appealed the assessment to the County Council which found it to be improper. The Supervisor of Assessments then took an appeal to the Maryland Tax Court. The Tax Court held that the Supervisor had acted properly in assessing the land and building at the rates prevailing for the tax year 1972-1973. From the decision of the Tax Court, Firestone appealed to this Court.

The dispute in this case is over the meaning of Art. 81, § 8 (7). That section provides in pertinent part:

> "No leasehold or other limited interest in real or tangible personal property shall be subject to taxation except the following which shall be subject to taxation in the same amount and the same extent as though the person in possession or the user thereof were the owner of such property.

> \* \* \*

> "(e) The interest or privilege of any lessee, bailee, pledgee, agent or other person in possession of or using any real or personal property *which is owned by the federal or State governments,* and which is leased, loaned, or otherwise made available to any person, firm, corporation, association, or other legal entity, with the privilege to use or possess such property in connection with a business conducted for profit, . . . shall be subject to taxation in the same amount and to the same extent as though the lessee or user were the owner of such property, *provided, that the foregoing shall not apply to federal or State property for which negotiated payments are made in lieu of taxes by any of the aforesaid owners. . . .* nor shall it apply to port facilities owned by the federal or State governments (or any agencies or instrumentality thereof) or by any political subdivision of the State of Maryland. The foregoing shall apply to an international trade center (referred to in Article

62B, § 4 (g) (2), of this Code) owned by the State government (or any agency or instrumentality thereof) unless negotiated payments in lieu of taxes or voluntary contributions are made by the aforesaid owner. Provided further that for the purposes of municipal and county taxation in the counties of Allegany, Anne Arundel, Montgomery, and Washington, the county commissioners or governing body of any municipality may, by adoption of an appropriate resolution or ordinance, exempt such property from county or municipal taxation, but the valuation shall be carried on the assessment books as though it is taxable for the purposes of computing payments to the several political subdivisions which are provided for in the laws f this State and which in any manner are based upon or related to assessments and assessed valuations." (Emphasis supplied.)

### (1)

The first question presented is whether the terms "federal or State governments" and "State property" used in the first sentence of § 8 (7) (e) include the county governments and county-owned property. If those terms were not intended to include the counties and county property, the result would be that § 8 (7) (e) would not reach any property owned by Wicomico County and leased to private businesses, and such property would be exempt from taxation.

The term "State" used in a constitutional provision or statute has often been viewed as including counties and other political subdivisions of the state. *See, e.g., Avery v. Midland County*, 390 U. S. 474, 480, 88 S. Ct. 1114, 20 L.Ed.2d 45 (1968); *Town of Gila Bend v. Hughes*, 13 Ariz. App. 447, 477 P. 2d 566, 567-568 (1970); *State v. Levy Court*, 17 Del. 597, 43 A. 522, 524 (1899). The fact that counties are creations of the State, created for the purpose of carrying out the policies of the State in administering the government, *Town Commissioners of Centreville v. County*

*Commissioners of Queen Anne's County,* 199 Md. 652, 655, 87 A. 2d 599 (1952), would support the conclusion that, in the context of § 8 (7) (e), the Legislature intended that county governments and county-owned property be included within the terms "State government" and "State property."

The language of § 8 (7) (e) itself shows the Legislature's intent to reach property owned by counties and leased to private businesses. The exemption from taxes in § 8 (7) (e) of "port facilities owned by . . . any political subdivision of the State of Maryland" and the provision in § 8 (7) (e) that in four listed counties county-owned property leased to private businesses "may . . . [be] exempt[ed] . . . from county and municipal taxation," would be totally unnecessary if county-owned property leased to private businesses was not generally subject to taxation under § 8 (7) (e). In order to hold that § 8 (7) (e) did not reach county-owned property, we would have to view these provisions as surplusage. However, before we can regard these words as surplusage, it must be clear that the Legislature "could not possibly have intended the words to be in the legislation." *Baltimore City v. United Stores,* 250 Md. 361, 368, 243 A. 2d 521 (1968); *Armco Steel Corporation v. State Tax Commission,* 221 Md. 33, 44, 155 A. 2d 678 (1959). We have no basis for concluding that the port facilities exemption and the exemption for local taxes in four counties were not intended to be in § 8 (7) (e). The provisions of Art. 81, § 8 (7) (e) make property owned by counties and municipalities, and leased to private businesses conducted for profit, subject to taxation.

(2)

The next question to be considered is whether the payments in lieu of taxes made by Firestone to Wicomico County were "negotiated payments . . . made in lieu of taxes by any of the aforesaid owners" which would, under § 8 (7) (e), exempt the property leased by the County to Firestone from property taxes. The Supervisor of Assessments argues that the term "any of the aforesaid owners" refers to "the federal or State governments," and that the payments made

by Firestone to the County, therefore, did not exempt Firestone from liability for taxes on the industrial property.

Firestone's contention seems to be that the term "aforesaid owners" refers to "any lessee, bailee, pledgee, agent or other person in possession of or using any real . . . property" since § 8 (7) (e) provides that they "shall be subject to taxation in the same amount and to the same extent as though the lessee or user were the owner of such property . . . ."

We conclude that the phrase "by any of the aforesaid owners" in § 8 (7) (e) was intended by the Legislature to refer to payments "by the federal or State governments," including those by local governments, and that, therefore, Firestone's payments to Wicomico County did not bring Firestone's interest in the industrial site within the "payments in lieu of taxes" exemption in § 8 (7) (e). In other words, the "payments in lieu of taxes" provision was meant to encompass payments by one governmental entity which owned the property to another governmental entity having taxing authority, pursuant to an agreement between the two levels of government. The provision was not intended to encompass payments by a private business to a governmental entity.

The language of the statute is clear on this point. The key words referring to ownership in the first sentence of § 8 (7) (e) are "real and personal property which is owned by the federal or State governments." Since the State and federal governments are the only "owners" mentioned in § 8 (7) (e), the term "aforesaid owners" must refer to them. Thus, the language of § 8 (7) (e) clearly indicates that payments by Wicomico County to the State in lieu of State taxes would have been necessary to obtain an exemption from taxation.[1]

---

1. Of course, we do not have before us in this case payments by one governmental entity to another, and therefore nothing in this opinion is intended to have any bearing upon the nature and scope of whatever tax exemption might arise from an agreement between two levels of government, and what effect such agreement might have on taxation by a third level of government.

Other statutory provisions confirm that this was the legislative intent. For example, a 1973 amendment to Art. 81, § 8 (7) (e) added the following sentence:

"The foregoing shall apply to an International Trade Center (referred to in Article 62B, Section 4 (g) (2), of this Code) *owned by the State government* (or any agency or instrumentality thereof) unless negotiated payments in lieu of taxes or voluntary contributions are made by *the aforesaid owner.*" (Emphasis supplied.)

The title to the amendment (Acts of 1973, ch. 476) described the enactment in the following words:

"An Act to . . . provide that unless negotiated payments in lieu of taxes or voluntary contributions are made by the State government (or any agency or instrumentality thereof), as owner of an international trade center, the interest of any lessee, bailee, pledgee, agent or other person in possession or using the aforesaid international trade center, shall be subject to taxation."

Thus, in a provision in § 8 (7) (e) similar to the provision at issue in the instant case, the Legislature clearly demonstrated that it considered payments in lieu of taxation made by one governmental level to another to be the proper method for the State or a county government to obtain exemption from taxes on public property leased to private businesses. This method of satisfying the tax obligations of lessees of governmentally owned property is also illustrated by Code (1957, 1971 Repl. Vol, 1974 Cum. Supp.), Art. 41, § 266P, which delineates the powers of the Maryland Industrial Development Financing Authority, an agency of the State government. Section 266P(10) provides that the Authority may

" . . . purchase, acquire, attach, seize, accept, or take title to any industrial project by conveyance or, when an insured mortgage thereon is clearly in default, by foreclosure; and sell, lease, or rent an

industrial project for a use specified in § 266-O or any other use."

Section 266P (11) further provides that the Authority may:

"Enter into agreements to pay annual sums in lieu of taxes to any municipality, county, or taxing district of the State in respect of any real property which is owned by the Authority and located in such municipality, county, or taxing district."

In the present case, since there were no payments in lieu of taxes by the governmental entity owning the property, the lessee was not excused under Art. 81, § 8 (7) (e), from paying property taxes.

*Order affirmed.*
*Appellant to pay costs.*