# HOLMES ET AL. ETC. *v.* CRIMINAL INJURIES COMPENSATION BOARD

[No. 110, September Term, 1975.]

*Decided June 23, 1976.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and *O'DONNELL, JJ.

*Steven M. Pavsner,* with whom were *Jules Fink* and *Katz & Fink* on the brief, for appellants.

*Clarence W. Sharp, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Arrie W. Davis, Assistant Attorney General,* on the brief, for appellee.

ELDRIDGE, J., delivered the opinion of the Court. MURPHY, C. J., dissents and filed a dissenting opinion at page 69 *infra.*

The question presented here is whether the economic value of the loss of "maternal services" should be considered in determining whether minor children claiming benefits under the Criminal Injuries Compensation Act, Maryland Code (1957, 1973 Repl. Vol., 1975 Cum. Supp.), Art. 26A, §§ 1-17, have suffered "serious financial hardship" as a result of the death of their mother.

On June 8, 1972, Delores Benita Holmes was murdered on a public street in Prince George's County, Maryland. Her assailant was later convicted of second degree murder and sentenced to twenty years' imprisonment. At the time of her death, Mrs. Holmes was employed at a monthly wage of

---

* *Reporter's Note*: O'Donnell, J., participated in the hearing of the case and in the conference in regard to its decision, but died prior to the adoption of the opinion by the Court.

$520.00. In addition to her employment, she also provided "maternal services" for her three adult and seven minor children. The services consisted of "cooking, housekeeping" and similar services normally performed by someone in the home. Mrs. Holmes and her family resided cost-free in a house owned by a relative, but, after her death, this free housing was no longer provided.

Subsequent to Mrs. Holmes's death, the domestic services which she had been performing for her family were assumed without charge to the family by her two adult female children. A claim was subsequently filed on behalf of the minor children before the Criminal Injuries Compensation Board. The claim was heard by a single board member, Code (1957, 1973 Repl. Vol., 1975 Cum. Supp.), Art. 26A, §§ 6, 8 (a), who found, as a matter of fact, that the surviving children were receiving $817.00 per month in Social Security and Veterans' Administration benefits. Additionally, the children received the proceeds of a $20,400.00 life insurance policy. Those proceeds were invested in a home for the Holmes children, and thus that income "washed out" the previous cost free shelter provided them. However, because Mrs. Holmes's monthly income had been only $520.00, and the children were receiving $817.00 in benefits,[1] the board member denied the claim, concluding that:

"1. The decedent was the innocent victim of a crime.

"2. The claimants have not met the requirements of Section 12(f) of the statute which requires that claimants must have a serious financial hardship in order for an award to be made by this Board. The siblings herein are now receiving benefits in excess of the victim's gross salary prior to the incident."

An appeal to the full Board was filed from the initial denial of an award. Code, Art. 26A, § 9 (a). At a hearing before the full Board, the claimants argued that the single

---

1. It was represented at oral argument before us that the $817.00 figure was subsequently reduced, by the disallowance of certain benefits, to a total of $511.10 per month.

board member erred in failing to consider the economic value of the "maternal services" performed by Mrs. Holmes, in addition to her monthly wages. In support of their position, they presented the testimony of David J. Farber, an economist with the United States Department of Labor. Mr. Farber testified that in evaluating the economic position of the Holmes family prior to Mrs. Holmes's death, recognition should be given to the pecuniary value of the "maternal services" which she performed. He then estimated, using certain formulae, the monetary value of the services rendered by Mrs. Holmes to be $634.90 per month. In conclusion, Mr. Farber said that "in order to have a realistic evaluation of the financial position or value of services and earnings performed that you would add the $634.90 to the $520.00 which the decedent was earning to arrive at $1,154.90 as her actual total worth to her family in her lifetime."

The full Board rejected the claimants' position that the value of Mrs. Holmes's services must be considered in determining whether the claimants had suffered serious financial hardship as a result of her death, and affirmed the denial of an award. Thereafter, the Superior Court of Baltimore City affirmed the action of the Board.[2] The claimants appealed to the Court of Special Appeals and, prior to a decision by that court, we issued a writ of certiorari to determine whether the value of the loss of "maternal services" is includable in determining serious financial hardship under § 12 (f) (1) of Art. 26A.[3]

2. Prior to the final decision of the Superior Court of Baltimore City, Ch. 204 of the Acts of 1975 was enacted, Code (1957, 1973 Repl. Vol., 1975 Cum. Supp.), Art. 26A, § 10, effective July 1, 1975, which provided that aggrieved claimants may appeal the Board's decision pursuant to the provisions of the Administrative Procedure Act, Code (1957, 1971 Repl. Vol., 1975 Cum. Supp.), Art. 41, §§ 255 and 256. Since legislative changes affecting only procedural rights generally apply to pending actions, Janda v. General Motors, 237 Md. 161, 168, 205 A. 2d 228 (1964); Richardson v. Richardson, 217 Md. 316, 320, 142 A. 2d 550 (1958); Beechwood Coal Co. v. Lucas, 215 Md. 248, 254, 137 A. 2d 680 (1958), judicial review pursuant to the new procedural amendments to the Criminal Injuries Compensation Act is appropriate.

3. While the claimants have employed the term "maternal services" throughout this case, at oral argument before us the claimants' attorney made it clear that the term was being used to describe, and was limited to, normal domestic services which could be performed in the home by any adult, such as cooking, housecleaning, etc.

Art. 26A, § 12 (f) (1) provides:

"If the Board or Board member, as the case may be, finds that the claimant will not suffer serious financial hardship, as a result of the loss of earnings or support and the out-of-pocket expenses incurred as a result of the injury, if not granted financial assistance pursuant to this article to meet the loss of earnings, support, or out-of-pocket expenses, the Board or Board members shall deny an award. In determining the serious financial hardship, the Board or Board member shall consider all of the financial resources of the claimant. Unless total dependency is established, a family is considered to be partially dependent on a mother with whom they reside without regard to actual earnings."

The Board contends that under this section, unless the serious financial hardship results from losses attributed to out-of-pocket expenses, the Board must deny an award. It concedes that if the Holmes family had hired someone to perform the same "maternal" services that the two adult sisters are now performing without charge, then the fees charged for those services would have constituted out-of-pocket expenses which the Board would have had to consider in determining whether "serious financial hardship" existed. Further, counsel for the Board "assumed" at oral argument that if the sisters had submitted a bill for their own services, then that bill similarly would have been taken into consideration by the Board. However, since the services now being performed by the adult sisters were without charge, and therefore no out-of-pocket expenditures resulted from the loss of Mrs. Holmes's "maternal" care, the Board argues that the economic value of her care cannot be considered in determining whether serious financial hardship exists.

We disagree. In our view, § 12 (f) (1) does not require that serious financial hardship must result from out-of-pocket expenditures. Section 12 (f) (1) provides that the Board shall

deny an award where "the claimant will *not* suffer serious financial hardship, as a result of the loss of earnings or support *and* the out-of-pocket expenses incurred . . . ." (Emphasis supplied.) This section requires a mandatory denial of an award to claimants who do not suffer serious financial hardship as a result of the criminal activity. *See Criminal Victim Compensation in Maryland*, 30 Md. L. Rev. 266, 281-282 (1970); Art. 26A, § 1. Moreover, the section specifies that serious financial hardship must result from the loss of earnings, support or out-of-pocket expenses. Section 12 (f) (1) is clear, however, that if such hardship does result from any of the specified sources, then the provisions of that section do not come into play. By its terms, the statute requires a mandatory denial of an award if, and only if, the Board determines that the claimant will not suffer serious financial hardship as a result of the loss of earnings or support *and* that he will not suffer such hardship as a result of out-of-pocket expenditures. If either finding cannot be made, or, in other words, if serious financial hardship does result from either the loss of earnings or support or from out-of-pocket expenses, then § 12 (f) (1) does not require that the Board deny benefits. Only where no hardship results from the loss of earnings or support, or from expenditures, does § 12 (f) (1) mandate the denial of an award.

This conclusion is also supported by other language contained in § 12 (f) (1) which provides that an award shall be denied where no serious financial hardship would result if the claimant is "not granted financial assistance pursuant to this article to meet the loss of earnings, support, *or* out-of-pocket expenses." (Emphasis supplied.) As is indicated by this provision, the types of losses necessary to sustain a finding of serious financial hardship, namely "the loss of earnings, support, or out-of-pocket expenses," are set forth in the disjunctive, and any one such type of loss may alone support a determination that the requisite hardship exists.

If, as the Board contends, serious financial hardship must stem only from out-of-pocket expenses, then the words "loss

of earnings or support" in § 12 (f) (1) would be merely surplusage, since those losses would also have to consist of out-of-pocket expenditures. In construing statutes, however, no word, clause, sentence, or phrase shall be treated as surplusage if such a construction can reasonably be avoided. *Firestone Tire & Rubber v. Supervisor*, 275 Md. 349, 353, 340 A. 2d 221 (1975); *St. Paul Fire & Mar. v. Ins. Comm'r*, 275 Md. 130, 142, 339 A. 2d 291 (1975); *Karns v. Liquid Carbonic Corp.*, 275 Md. 1, 18, 338 A. 2d 251 (1975); *Kadan v. Bd. of Sup. of Elections*, 273 Md. 406, 415, 329 A. 2d 702 (1974); *A. H. Smith Sand & Gravel v. Dep't*, 270 Md. 652, 659, 313 A. 2d 820 (1974).

Moreover, under § 7 of Art. 26A, "[n]o award shall be made on a claim unless the claimant has incurred a minimum out-of-pocket loss of one hundred dollars *or* has lost at least two continuous weeks' earnings or support." (Emphasis supplied.) It is implicit in this section that an award may be granted, assuming serious financial hardship, where the claimant has lost "at least two continuous weeks' earnings or support," regardless of whether any out-of-pocket expense has been incurred. The construction of § 12 (f) (1) urged by the Board would render meaningless the provision of § 7 which authorizes awards based on lost earnings or support alone, since it would require the denial of an award under § 12 (f) (1) in all instances where no out-of-pocket expenses were also incurred. Such a construction should be avoided since all sections of a statute must be reconciled if it is reasonably possible to do so. *Prince George's Co. v. White*, 275 Md. 314, 317-319, 340 A. 2d 236 (1975); *County Council v. Supervisor*, 274 Md. 116, 120, 332 A. 2d 897 (1975); *A. H. Smith Sand & Gravel v. Dep't*, *supra*, 270 Md. at 659; *Parker v. Junior Press Printing*, 266 Md. 721, 725, 296 A. 2d 377 (1972).

The plain language of § 12 (f) (1), therefore, as well as the need to harmonize that section with the various other provisions of the Criminal Injuries Compensation Act, compels the conclusion that serious financial hardship under § 12 (f) (1) need not result solely from out-of-pocket

expenditures, but may also occur as a result of the loss of earnings or the loss of support alone.

The Board further contends, however, that the loss of maternal care is not such loss of "support" as is contemplated by § 12 (f) (1). It argues that the Legislature intended to stress the pecuniary nature of a compensable loss, and did not intend to provide awards for the loss of "parental guidance and moral support." In construing a statute, a Court must consider the language in its plain and ordinary meaning. *Blue Cross v. Franklin Sq. Hosp.*, 277 Md. 93, 105, 352 A. 2d 798 (1976); *Bright v. Unsat. C. & J. Fund Bd.*, 275 Md. 165, 169, 338 A. 2d 248 (1975); *Md.-Nat'l Cap. P. & P. v. Rockville*, 272 Md. 550, 556, 325 A. 2d 748 (1974); *Radio Com., Inc. v. Public Serv. Comm'n*, 271 Md. 82, 93, 314 A. 2d 118 (1974); *Grosvenor v. Supervisor of Assess.*, 271 Md. 232, 237-238, 315 A. 2d 758 (1974). We believe that the loss of "maternal care" is within the plain and ordinary meaning of the word "support." In fact, as we have previously mentioned, the Board conceded that if the two sisters had hired someone else to perform the same services which they performed without charge, then such expenses would be considered in determining serious financial hardship. This concession evidences a recognition by the Board that the loss of maternal care could give rise to serious financial hardship if an expense is incurred in replacing that care. As discussed, however, the fact that an out-of-pocket expense was not occasioned by the Holmes family's loss does not, by itself, mean that the loss cannot be considered in determining "serious financial hardship" under § 12 (f) (1). Furthermore, as the claimants point out, the Board's view of § 12 (f) (1) would require the absurd result that if a family could afford to hire substitute care they would be able to incur an out-of-pocket expense, but if they could not afford to do so, no compensable loss would occur, even though a family with insufficient funds to hire care might be more likely to incur financial hardship as a result of the criminal activity.

Moreover, while we agree with the Board that § 12 (f) (1) requires *financial* hardship, we do not agree with its

contention that the nature of the loss of Mrs. Holmes's "maternal services" was the loss of "parental guidance and moral support." No contention is made by the Holmes family that they have incurred serious financial hardship as a result of the loss of parental guidance, moral support, companionship, comfort, love, affection or any other non-pecuniary element of parental care. As we have previously mentioned, the claimants have, by asserting financial hardship resulting from the loss of "maternal services," characterized those services as cooking, housecleaning, and similar domestic services.

The Holmes family does contend, however, and we agree, that the economic value of the loss of Mrs. Holmes's services, such as cooking, housecleaning, washing clothes, ironing, and other similar household functions, should be evaluated in determining whether serious financial hardship has resulted from her death. Clearly, Mrs. Holmes might have increased her earnings by purchasing care for her children, thereby emancipating herself for additional paid work. Although she chose to perform the parental services herself, we nevertheless believe that the economic position of the Holmes family was enhanced by the value of those services. Thus, the loss of such services may, upon proof of their monetary value, constitute a loss of a pecuniary nature, and may result in serious *financial* hardship.

In other contexts, this Court has held that the loss of domestic services performed by a relative may constitute a loss of a pecuniary nature. In *Terry v. O'Neal,* 194 Md. 680, 72 A. 2d 26 (1950), an infant child sued under the Wrongful Death Act for damages arising from the death of her parents. At that time the Wrongful Death Act, Code (1939), Art. 67, §§ 1-3, required that the loss sustained be of a pecuniary nature. *See State v. Wooleyhan Transport Co.,* 192 Md. 686, 693, 65 A. 2d 321 (1949). The Court in *Terry v. O'Neal, supra,* upheld an instruction to the jury that damages may be awarded for "the value of any services that may [have been] rendered by the mother and father to the child until that child arrives at the age of twenty-one years." *Id.* at 690-691. In *B. & O. R.R. Co. v. State, Use of Mahone,*

63 Md. 135 (1885), the plaintiff sued for the wrongful death of her mother who had resided in her home, performing housekeeping services and caring for the plaintiff's children. As a result of the mother's death, the plaintiff was required to stay at home and perform those same services. The Court held that the loss of the mother's services was a pecuniary loss, and hence compensable, even though the plaintiff did not herself spend money to hire substitute care. *See*, additionally, *Industrial Service Co. v. State*, 176 Md. 625, 6 A. 2d 372 (1939); *Sun Cab Co. v. Walston*, 15 Md. App. 113, 289 A. 2d 804 (1972), *aff'd in part and rev'd in part, on other grounds*, 267 Md. 559, 298 A. 2d 391 (1973).

In conclusion we believe that the monetary value of the loss of Mrs. Holmes's "maternal services" must be considered by the Board in its determination, under Art. 26A, § 12 (f) (1), of whether the Holmes family suffered serious financial hardship from the criminal activity.[4]

> *Judgment of the Superior Court of Baltimore City reversed and case remanded to that court with instructions to remand the case to the Criminal Injuries Compensation Board for further proceedings not inconsistent with this opinion.*
> *Appellee to pay costs.*

*Murphy, C. J. dissenting:*

I fully agree with the majority that Maryland Code, Art. 26A, § 12 (f) (1) compels the conclusion "that serious financial hardship under § 12 (f) (1) need not result solely from out-of-pocket expenditures, but may also occur as a result of the loss of earnings or the loss of support alone." I do not agree, however, with the majority's holding that the

---

4. In so holding, we do not necessarily endorse the particular monetary value which the Holmes's expert witness ascribed to the services performed by Mrs. Holmes nor the manner by which he arrived at that value. Moreover, we in no way intimate an opinion as to whether there was in fact serious financial hardship resulting from Mrs. Holmes's death.

loss of "maternal care" constitutes the loss of "support" within the contemplation of § 12 (f) (1).

Section 12 (f) (1) provides that the Board shall make awards only where it finds that the claimant will "suffer serious financial hardship, as a result of the loss of earnings or support and the out-of-pocket expenses incurred as a result of the injury . . . ." Webster's Third New International Dictionary 1603 (1971) defines "out-of-pocket" expenses as "consisting of or requiring an actual cash outlay." From the tenor of § 12 (f) (1) it is clear that the words "loss of earnings or support," "out-of-pocket expenses" and "financial hardship" were intended to implicate only direct financial losses actually incurred as a result of the criminal act, and not a loss of services, the financial measure of which would have to be estimated over an extended period of years. A statute should be construed according to the ordinary and natural import of its language, unless a different meaning is clearly indicated by the context, without resorting to subtle or forced interpretations for the purpose of extending or limiting its operation. *Department of Motor Vehicles v. The Greyhound Corp.,* 247 Md. 662, 234 A. 2d 255 (1967). In my judgment, the majority, while paying lip service to this well-settled principle of statutory construction, ignores its proper application.

The phrasing in § 12 (f) (1), *i.e.,* "loss of earnings or support," together with the juxtaposition of the words "earnings" and "support" in the statute, evidences an intent to associate one concept with the other. In *Chayt v. Zoning Appeals Board,* 177 Md. 426, 9 A. 2d 747 (1939), our predecessors analyzed the words " 'arranged, intended or designed,' " which was the key phrase in a zoning ordinance. The Court concluded " '. . . that when two or more words of analogous meaning are coupled together they are understood to be used in their cognate sense, *express the same relations* and give color and expression to each other.' " (Emphasis added.) Similarly, I think the legislature fully intended that "earnings" and "support" would express the "same relations," *i.e.,* an economic relation. Further evidence of this relationship is found in § 7 of Art. 26A where it is stated

that " [n]o award shall be made on a claim unless the claimant has incurred a minimum out-of-pocket loss of one hundred dollars or has lost at least *two continuous weeks' earnings or support.*" (Emphasis added.) Again, "support" is conceptualized as a matter of economics.

Section 12 (f) ·(1) requires that financial hardship be measured by losses of a direct pecuniary nature. Since the claimants incurred no out-of-pocket expenses, loss of earnings or support which resulted in serious financial hardship within the sense contemplated by § 12 (f) (1), I would affirm the judgment.