**UNITED STATES of America, Plaintiff,**

v.

**STATE OF MARYLAND, et al., Defendants.**

**Civ. No. H–89–331.**

United States District Court, D. Maryland.

Oct. 3, 1989.

Kenneth C. Kohl, U.S. Dept. of Justice, Washington, D.C., and Robert Broyles, Veterans Admin., Baltimore, Md., for plaintiff.

Dennis M. Sweeney, Deputy Atty. Gen., and C.J. Messerschmidt, Asst. Atty. Gen., Baltimore, Md., for defendants.

ALEXANDER HARVEY, II, Chief Judge.

Presently pending before the Court in this civil action are cross motions for summary judgment filed by both plaintiff and defendants. The plaintiff in this case is the United States of America which has here sued the State of Maryland and the Maryland Criminal Injuries Compensation Board (hereinafter "the Board").

In 1968, the Maryland Legislature enacted the Criminal Injuries Compensation Act (hereinafter "the Maryland Act"), which provides for the payment of money to innocent victims of crimes committed in Maryland if such victims suffer disability or incur financial hardships. Maryland Code (1987 Repl.Vol.) Art. 26A, §§ 1 *et seq.* Under a federal statute, 38 U.S.C. § 629, the United States is entitled to recover from a third party sums representing the reasonable cost of medical services rendered by the Veterans Administration (hereinafter "the VA") to veterans who suffered non-service connected disabilities as the victims of crimes committed in a state which has a victim-compensation program like Maryland.

In 1985 and 1986, the VA paid for medical treatment for two veterans who were victims of crimes committed in Maryland. Thereafter, the VA unsuccessfully sought

reimbursement from the Board. Plaintiff has now brought suit in this Court, asserting that the defendants, through the Board, have violated 38 U.S.C. § 629 by refusing to reimburse the VA for the medical care it provided to the veterans in question. Defendants initially responded to the suit by filing a motion to dismiss the complaint, asserting that plaintiff was not as a matter of law entitled to a recovery from the State and the Board.[1] Thereafter, both plaintiff and defendants filed the motions for summary judgment which are now pending before the Court.

Memoranda and exhibits have been filed by the parties in support of and in opposition to the pending motions. Oral argument has been heard in open Court. For the reasons stated herein, this Court will grant defendants' motion for summary judgment and deny plaintiff's motion for summary judgment.

## I

### Facts

Freddie F. Wanamaker, a 58 year old veteran, was assaulted and brutally battered in Baltimore City on or about February 9, 1985. Wanamaker received treatment at the Veterans Administration Medical Center in Baltimore, Maryland. The cost of such medical treatment totaled $7,680.00.

On or about June 1, 1986, William T. Smith, a 40 year old veteran, was robbed and assaulted in Baltimore City. Smith received treatment at Veterans Administration Medical Centers in Baltimore, Maryland and in Martinsburg, West Virginia for the injuries he suffered as a result of the crime. The cost of his medical care totaled $7,327.00.

The VA in both cases addressed letters to the Board, claiming that the United States was statutorily entitled to reimbursement under the Act for the cost of medical treatment of Wanamaker and Smith. Acting pursuant to advice from the Attorney General of Maryland, the Board has refused to reimburse the United States for the cost of such medical care. This suit seeks such reimbursement.

## II

### Statutory Background

#### (a) The Federal Statute

The Veterans Administration furnishes hospital care to veterans for non-service connected disabilities if the veterans are unable to defray the cost of such care. 38 U.S.C. § 610(a)(1)(I). The veterans' ability to pay the cost of medical care is determined according to guidelines set forth in 38 U.S.C. § 622(a)(1).

Under 38 U.S.C. § 629, the VA may, under certain circumstances, recover the reasonable cost of medical care for treatment of a non-service connected disability. The statute states in pertinent part:

(a)(1) [I]n any case in which a veteran is furnished care and services under this chapter for a non-service connected disability described in paragraph (2) of this subsection, the United States has the right to recover or collect the reasonable cost of such care or services (as determined by the Administrator) from a third party to the extent that the veteran (or the provider of the care or service) would be eligible to receive payment for such care or services from such third party if the care or services had not been furnished by a department or agency of the United States.

(2) Paragraph (1) of this subsection applies to a non-service-connected disability—

\*    \*    \*    \*    \*    \*

(C) that is incurred as a result of a crime of personal violence that occurred in a State, or a political subdivision of a State, in which a person injured as the result of such a crime is

---

**1.** In their motion to dismiss, defendants contended that this action should be dismissed pursuant to Rule 12(b)(6), F.R.Civ.P. (1) because plaintiff's claims were barred by the Eleventh Amendment; (2) because 38 U.S.C. § 629 does not require payment to plaintiff on the facts alleged in the complaint; (3) because § 629, as construed by the plaintiff, violates the Tenth Amendment, and (4) because plaintiff has failed to join indispensable parties.

entitled to receive health care and services at such State's or subdivision's expense for personal injuries suffered as the result of such crime; ...

38 U.S.C. §§ 629(a)(1) and (a)(2)(C).

This statute gives the United States various methods by which it may recover the cost of medical treatment. These methods are as follows:

(b)(1) As to the right provided in subsection (a) of this section, the United States shall be subrogated to any right or claim that the veteran (or the veteran's personal representative, successor, dependents, or survivors) may have against a third party.

(2)(A) In order to enforce any right or claim to which the United States is subrogated under paragraph (1) of this subsection, the United States may intervene or join in any action or proceeding brought by the veteran (or the veteran's personal representative, successor, dependents or survivors) against a third party.

(B) The United States may institute and prosecute legal proceedings against the third party if—

(i) an action or proceeding described in subparagraph (A) of this paragraph is not begun within 180 days after the first day on which care or services for which recovery is sought are furnished to the veteran by the Administrator under this chapter;

(ii) the United States has sent written notice by certified mail to the veteran at the veteran's last-known address (or to the veteran's personal representative or successor) of the intention of the United States to institute such legal proceedings; and

(iii) a period of 60 days has passed following the mailing of such notice.

38 U.S.C. §§ 629(b)(1), (b)(2)(A) and (b)(2)(B).

In addition, the statute provides that "no law of any State or of any political subdivision of a State ... shall operate to prevent recovery or collection by the United States under this section...." 38 U.S.C. § 629(f).

### (b) *The State Statute*

The State of Maryland has enacted the Maryland Criminal Injuries Compensation Act to provide compensation for victims of violent crimes committed in Maryland. Maryland Code (1987 Repl.Vol.), Art. 26A, §§ 1 *et seq.* The Maryland Act created the Criminal Injuries Compensation Board which hears and determines all claims for awards filed under the statute. Art. 26A, § 4(d). Section 12 of the Act sets forth several prerequisites to receiving an award. One prerequisite states as follows:

(f)(1) If the Board members find that the claimant will not suffer serious financial hardship, as a result of the loss of earnings or support and the out-of-pocket expenses incurred as a result of the injury, if not granted financial assistance pursuant to this article to meet the loss of earnings, support or out-of-pocket expenses, the Board members shall deny an award. In determining the serious financial hardship, the Board members shall consider all of the financial resources of the claimant. Unless total dependency is established, a family is considered to be partially dependent on a mother with whom they reside without regard to actual earnings.

Art. 26A § 12(f)(1).

In moving for summary judgment, defendants contend, *inter alia*, that plaintiff cannot satisfy the "serious financial hardship" test and that therefore the United States has no right to reimbursement.

### III

### *Discussion*

Although various other issues have been raised here, the critical question to be answered by the Court is whether, on this record, the Board's application of the Maryland Act to these facts operates to defeat the recovery sought by the United States under § 629. *See* 38 U.S.C. § 629(f). If the Board has acted in a discriminatory manner in denying recovery by the United States, then the Board's actions have directly conflicted with federal law as embodied in § 629(f), which must prevail in light

of the Supremacy Clause of the Constitution. Art. VI, cl. 2. If, on the other hand, the VA was here treated in the same manner as any other provider of medical services, then the Board complied with federal law in denying the reimbursement sought.

For the reasons stated herein, this Court concludes that the Board has not acted in a discriminatory fashion and has therefore not violated § 629. Accordingly, plaintiff's motion for summary judgment must be denied and defendants' motion for summary judgment must be granted.

### (a) *Subrogation*

Defendants first contend that § 629 gives the United States a claim solely in the nature of subrogation. If so, defendants argue, the Eleventh Amendment would bar suit in federal court because the United States, as subrogee, acquires only the legal rights of the victimized veterans who themselves would not be entitled to sue the State in federal court. Plaintiff argues to the contrary that § 629 gives the United States an independent right of action which it may exercise in any legal proceeding.

■ Subrogation allows a party to exercise the rights and remedies formerly enjoyed by another who no longer uses those rights due to actions of the party seeking subrogation. *Banks Tower Communications, Ltd. v. The Home Insurance Co.,* 590 F.Supp. 1038 (E.D.Pa.1984). The subrogee thus acquires only those rights which the subrogor has attained, "[f]or it is elementary that one cannot acquire by subrogation what another whose rights he claims did not have." *United States v. Munsey Trust Co.,* 332 U.S. 234, 242, 67 S.Ct. 1599, 1603, 91 L.Ed. 2022 (1947). Thus, the United States as subrogee to the victimized veterans, acquires only those rights that they would have under the laws of Maryland. If viewed purely as a subrogation issue, the United States would thus have no right to sue in federal court.

■ For several reasons, however, subrogation and the Eleventh Amendment do not act as a bar to the claims asserted by the United States in this case under § 629. First, the United States seeks to recover payment for itself, not for the benefit of the victimized veterans. The right of recovery and any monies obtained belong to the United States, and plaintiff is entitled to bring this suit because the Eleventh Amendment traditionally does not bar suits by the United States against a State. Indeed, the Supreme Court has flatly held that the Eleventh Amendment is no bar to a suit brought against a state by the United States:

> While [the Eleventh Amendment] has been read to bar a suit by a State's own citizen ..., *Hans v. Louisiana,* 134 U.S. 1, [10 S.Ct. 504, 33 L.Ed. 842 (1890)], nothing in this or any other provision of the Constitution prevents or has ever been seriously supposed to prevent a State's being sued by the United States, [citations omitted], with or without specific authorization from Congress....

*United States v. Mississippi,* 380 U.S. 128, 140, 85 S.Ct. 808, 814, 13 L.Ed.2d 717 (1965).

Plaintiff thus may bring suit in federal court under § 629 to enforce any rights it has acquired as a result of furnishing medical care to a veteran who has been the victim of a violent crime committed in Maryland.

Moreover, § 629 itself confers on the United States an independent right of recovery. This independent right is set forth in the language of the statute and is supported by the statute's legislative history and the relevant case law.

The statute states that "the United States may institute and prosecute legal proceedings against [a] third party...." 38 U.S.C. § 629(b)(2)(B). This language clearly contemplates an independent right of recovery by the United States, enforceable in a separate action. The legislative history likewise supports the existence of such an independent right of recovery:

> The Committee Bill ... add[s] section 629 to provide clear statutory authority for recoveries by the United States in the case of care and services furnished by the VA to veterans for non-service-connected disabilities ... Under this provision, the United States would have an

**1268**

independent right to recover its costs of providing health care in such situations to the extent that the parties who are liable—such as ... the State with a crime-victim compensation program— would be liable if the care and treatment were provided in a non-Federal Government facility.

S.Rep. No. 96–747, *reprinted in* 1980 U.S. Code Cong. & Admin.News, pp. 2463, 2543–44.

There is relevant case law supporting the existence of such an independent right of recovery under the Medical Care Recovery Act (hereinafter the "MCRA"), 42 U.S.C. § 2651, to which § 629 has been compared in the legislative history.[2] The MCRA gives the United States the right to sue for the costs of medical care for injuries which arose "under circumstances creating a tort liability upon some third person." 42 U.S.C. § 2651. In *United States v. Fort Benning Rifle and Pistol Club*, 387 F.2d 884 (5th Cir.1967), the Fifth Circuit concluded that the MCRA conferred an independent right of recovery upon the United States. The Court stated that the right to recover could not be wholly subrogated because the United States attained a right of recovery only when the injured party could not recover. The Court further noted that the United States would be entitled to act as a subrogee "to the extent that its independent right to recover depends upon the determinations under state law as to when the circumstances create tort liability in some person." 387 F.2d at 887. *See also United States v. Merrigan*, 389 F.2d 21, 23 (3d Cir.1968) (the MCRA unmistakably confers on the government an independent right of recovery).

Pursuant to the authorities cited hereinabove, this Court concludes that plaintiff has, under § 629, an independent right of recovery subject to the restriction that it must prove its right to recover under state substantive law. Accordingly, plaintiff's claims asserted in this case are not barred by the Eleventh Amendment.

### (b) *Tenth Amendment*

Defendants also contend that 38 U.S.C. § 629 violates the Tenth Amendment, because the statute was not enacted pursuant to a "power ... delegated to the United States by the Constitution." U.S. Const., 10th Amend. This argument is without merit.

First, the Supreme Court has consistently recognized Congress' broad constitutional power to regulate the armed forces, noting that "the constitutional power of Congress to raise and support armies and to make all laws necessary and proper to that end is broad and sweeping." *United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968). In *United States v. Oregon*, 366 U.S. 643, 81 S.Ct. 1278, 6 L.Ed.2d 575 (1961), the Supreme Court upheld a federal law under which the personal property of a veteran who died intestate would escheat to the United States rather than the State. The Court concluded that the federal government, without violating the Tenth Amendment, could make laws governing veterans' benefits as necessary and proper to its delegated war powers. 366 U.S. at 648–49, 81 S.Ct. at 1281–82.

In *United States v. State of New Jersey*, 831 F.2d 458 (3d Cir.1987), the Third Circuit in a case similar to this one expressly rejected the argument that § 629 violates the Tenth Amendment. The Court stated: "[W]hen Congress has acted pursuant to its war powers, Art. I, § 8, cl. 12–14, the Tenth Amendment does not bar such a slight interference with a state compensation program." 831 F.2d at 465. In so holding, the Court discussed and relied upon several cases in which courts have upheld interaction between federal law and state compensation programs against attacks based on the Tenth Amendment. *See Cantwell v. County of San Mateo*, 631 F.2d 631 (9th Cir.1980), *cert. denied*, 450 U.S. 998, 101 S.Ct. 1703, 68 L.Ed.2d 199 (1981); *Texas Employers' Insurance Ass'n v. United States*, 569 F.2d 874 (5th Cir.

---

**2.** "The nature of the government's right [in § 629] is similar to that conferred by the Federal Medical Care Recovery Act, 42 U.S.C. § 2651." H.R.Rep. No. 99–300, *reprinted in* 1986 U.S.Code Cong. & Admin.News, pp. 42, 1248, 1263.

1978), *cert. denied,* 439 U.S. 826, 99 S.Ct. 98, 58 L.Ed.2d 119 (1978); *United States v. Oregon, supra.*

For these reasons, defendants' Tenth Amendment argument must also be rejected.

### (c) *Indispensable Parties*

■ Defendants next argue that the plaintiff has failed to join the two veterans as indispensable parties and that this action should be dismissed pursuant to Rule 19, F.R.Civ.P. This argument is likewise meritless.

The interests of these two veterans have been adequately protected by the waiting period and notice provisions of 38 U.S.C. § 629(b). These provisions require the plaintiff to wait 180 days after furnishing treatment to veterans before instituting a legal proceeding, a period of time which corresponds to the 180 day limit for the filing of claims under the Maryland statute. Art. 26A § 6(b). The statute further requires the United States to send written notice to each victimized veteran 60 days prior to instituting an action. § 629(b)(2)(B)(ii). Since the Maryland statute bars the filing of a claim by a victim after 180 days unless good cause for an extension exists, the victimized veterans in this case could not have brought suit at the time the United States instituted an action.

Accordingly, the veterans Wanamaker and Smith are not indispensable parties under Rule 19, F.R.Civ.P.

### (d) *The Serious Financial Hardship Test*

■ The most substantial issue presented by the pending motions for summary judgment is whether plaintiff has on this record satisfied all requirements of the Maryland Act for a recovery. A significant prerequisite for any recovery under the Maryland Act is that "if the Board Members find that the claimant will not suffer serious financial hardship as a result of the ... expenses incurred as a result of the injury, ... the Board members shall deny the award." Maryland Code (1987 Repl. Vol.) Art. 26A § 12(f)(1). Since under the Supremacy Clause federal law must supersede state law, plaintiff contends that the "serious financial hardship" test should not apply to the United States because Congress has enacted § 628. It is plaintiff's position that the "serious financial hardship" requirement of the Maryland statute has the effect of denying recovery only to those health care providers like the VA who do not charge for the cost of medical care, since the victim cannot have any expenses which would affect him adversely. Plaintiff contends that § 12(f)(1) of the Maryland Act thus stands in direct conflict with § 629(f) of the federal statute because it operates in a discriminatory manner to prevent any recovery by the VA.

Plaintiff misreads § 629 and its legislative history. The statute does not give the VA a right to payment from a victim-compensation program of a state under any and all circumstances. Rather, § 629 is, by its terms, intended merely to prevent discrimination against the VA by a state program. Pursuant to § 629(a)(1), the United States has a right to recover the reasonable cost of medical care or services from a state program "to the extent that the veteran (or the provider of the care or service) would be eligible to receive payment for such care or services from [the Board] if the care or services had not been furnished by a department or agency of the United States."

Not only does the language of § 629 itself indicate the Congressional intention merely to place the VA on an equal footing with a non-federal health care provider, but the statute's legislative history also supports such a conclusion. The House of Representatives Report, commenting on the bill finally enacted, contained the following language:

> The reported bill would strengthen and clarify the Veterans' Administration's authority to recover the costs of veterans' nonservice-connected care from State workers' compensation, "no-fault" auto insurance and crimes of personal violence *where a veteran would have entitlement to payment or reimbursement by a third party for appropriate medical care furnished in a non-Federal hospital.* (Emphasis added.)

H.R.Rep. No. 97–79, *reprinted in 1981* U.S.Code Cong. & Admin.News, 1685, 1692–93.

A report from the VA to the Committee on Veterans Affairs of the House of Representatives, also discussing the proposed legislation, explained that "as a result of adverse court decisions and State statutes that are worded in such a fashion as to provide payment to private health care providers but exclude payment to federal health care providers, [the VA was] experiencing difficulties in collecting in a few States." H.Rep. No. 97–79, *reprinted in 1981* U.S.Code Cong. & Admin.News 1685, 1713. The statute's legislative history also makes it clear that its impact would vary from state to state. The same VA report noted that "the measure would not have an impact in all states." *Id.* The statement prepared by the Congressional Budget Office explicitly recognized that the scope of the statute would be determined by state law:

> It is extremely difficult to estimate with any precision the impact that this provision would have on VA recoveries, because the effects of the legislation would be different in each of the fifty states. State laws relating to ... victims-of-crime compensation vary widely in language and application. *The interpretation of the amendment would be expected to differ among the states as well.* (Emphasis added).

1981 U.S.Code Cong. & Admin.News, at 1703. It is therefore apparent that "Subsection (a)(1) [of § 629] does not eliminate all prerequisites to recovery contained in state compensation statutes." *United States v. State of New Jersey,* 831 F.2d 458, 462 (3d Cir.1987). Federal law merely requires that a recovery claim by the United States be analyzed as if the veteran had received care in a hospital other than a VA hospital. *Id.* at 461.

The Maryland statute differs markedly from similar enactments in other states.[3] The Court of Appeals of Maryland has

explained that § 12(f)(1) requires a mandatory denial of an award "if, and only if, the Board determines that the claimant will not suffer financial hardship as a result of a loss of earnings or support *and* that he will not suffer such hardship as a result of out-of-pocket expenditures." *Holmes v. Criminal Injuries Comp. Board,* 278 Md. 60, 65, 359 A.2d 84 (1976). Under the Maryland statute then, a private health care provider which submitted a bill for medical expenses to the victim of a crime would not be able to recover the cost of medical care unless it could be shown that the victim would suffer financial hardship as a result of the collection efforts of such private provider.

In 68 *Opinions of the Attorney General,* 222 (1983), the Attorney General of Maryland concluded that an indigent victim of crime was not entitled to payment by the Board of a medical bill received from the University of Maryland Hospital for medical care received. Interpreting § 12(f)(1), the Attorney General determined that the victim could not recover because he could not demonstrate that he would suffer serious financial hardship as a result of the criminal injury. The claimant in question was not entitled to a recovery because he did not have personal assets that could be attached by the hospital in execution of a judgment on the unpaid bills and because he thus had suffered no actual or foreseeable loss. In reaching this conclusion, the Attorney General stated that the Maryland Act was intended to ameliorate the impact of crime on victims and not to pay the otherwise uncollectible accounts of medical facilities. 68 *Op.Atty.Gen.* at 226; *see Gossard v. Criminal Injuries Compensation Board,* 279 Md. 309, 310, 368 A.2d 443 (1977); *Criminal Injuries Compensation Board v. Remson,* 282 Md. 168, 384 A.2d 58 (1978).

It is thus apparent that under Maryland law a private health care provider (or a victim seeking to have a bill paid) must also meet the serious financial hardship test

---

**3.** The Maryland statute is apparently unique. Counsel have not been able to refer the Court to any similar enactment in the other forty-nine states which contains the serious financial hardship requirement.

before it can recover amounts expended for a victim's medical care. Since the VA is similarly required to meet this same test, there was no discrimination against the VA in this case, and therefore no violation of § 629(a)(1) when the Board rejected the VA's claims. The United States has been afforded the same right to recover the cost of medical services as would a victim or private provider of such care under circumstances identical to those presented in this case. Since a private health care provider or a victim must meet the serious financial hardship test for a recovery, the requirement that the VA also meet this test does not result in discriminatory treatment.

In seeking a recovery in this case, plaintiff places heavy reliance on § 629(f) which prohibits state legislation which "operate[s] to prevent recovery or collection by the United States under this section." But § 629(f) must be read *in pari materia* with § 629(a)(1). The Maryland Act prevents recovery by a private provider of medical care as well as to a federal provider. Since the Maryland Act does not discriminate nor unfairly operate to prevent a recovery in this case as required by § 629(a)(1), there is no preemption by the federal legislation.

Plaintiff places heavy reliance on recent cases which have held that interpretations by particular states of their victim compensation programs violated § 629(f) by denying any recovery by the VA. *See United States v. State of New Jersey, supra* at 458; *United States v. State of California,* No. CV 87–0036–HLH, Slip Op. at 1 (C.D. Cal. June 2, 1987); *United States v. State of Illinois,* No. 86–C–10153 (N.D.Ill. Memorandum Opinion dated January 8, 1988). But the state statutes involved in those cases differed from the Maryland Act at issue here. In the *State of New Jersey* case, the State of New Jersey had refused to reimburse the VA because the treatment was "without charge to the veteran and therefore does not constitute an out-of-pocket lawfully reimbursable expense" as required by the state statute. 831 F.2d at 459. In ordering that the claims should be sent back to the Board for more detailed consideration pursuant to both state and federal law, the Third Circuit held that the State must "consider the cost of treatment by the VA as if the veteran had been billed for it ... thus constitut[ing] 'expenses actually and reasonably incurred' [under the New Jersey statute]" ... *Id.,* at 464.

The Third Circuit's holding in *State of New Jersey* was based essentially on the language of the New Jersey statute. As Congress recognized in § 629(a)(1), each state may enact any type of victim compensation program it chooses and any claimed discriminatory effect must be found only within the bounds of each state's statute. Plaintiff's reliance on the *State of New Jersey* decision is misplaced because of marked differences between the Maryland and the New Jersey enactments.

The New Jersey statute had an out-of-pocket loss requirement. In determining the amount of compensation to be awarded, the New Jersey Board was to take into consideration amounts received from "other sources," specifically including amounts received from "the United States or any agency thereof ..." N.J.Admin.Code 13:75–1.19. The statute vested a large measure of discretion in the Board to permit or deny awards. 831 F.2d at 464. By way of contrast, the Maryland Act requires the mandatory denial of an award if the serious financial hardship requirement has not been met.

The Third Circuit in *State of New Jersey* concluded that the statute, as applied by the district court, had discriminated against the United States because, in determining whether the out-of-pocket loss prerequisite had been met, the Board was required to consider only whether or not a bill had been rendered. Since the VA is one of a very few non-billing health care providers, the requirement of a bill was found to be discriminatory. Significantly, there was no consideration in *State of New Jersey* of the question whether a claim by a private health care provider similar to that of the VA in that case would likewise have been denied by the Board. Indeed, the narrow holding of the Court was "that Section 629 prohibits denial of a claim, made under a state victims' compensation statute, *solely* because the VA provided the medical care

without cost to the crime victim." (Emphasis added). 831 F.2d at 459. Moreover, the Third Circuit did not require that the claims at issue be paid but rather merely ordered a remand to the New Jersey Board so that it might decide whether the claims at issue could be denied on grounds not preempted by Section 629. 831 F.2d at 464, 466.

The Maryland statute contains none of the provisions deemed significant by the Third Circuit in *State of New Jersey*.[4] The apparent policy of the New Jersey statute is to pay validly-issued bills. The Maryland statute, on the other hand, focuses solely on the victim and attempts to ease the financial burden caused as a result of the crime. 68 *Op.Atty.Gen* at 226 ("the statutory purpose would be very poorly served if an eligible victim were denied victim compensation solely because available funds had been used to pay the otherwise uncollectible accounts of medical facilities.") Under the Maryland Act, the bill submitted by a private health care provider would not entitle a victim to a recovery unless enforcement of the indebtedness would result in serious financial hardship to the victim.

Pursuant to Maryland's interpretation of its Act, the VA is treated in the same manner as private health care providers. Only when the VA can demonstrate that a victim will be adversely affected by bill collection may it recover. Similarly, only when a private health care provider can demonstrate that the victim will be adversely affected may it recover. The Maryland statute is thus based on a policy which seeks to conserve financial resources for the payment of needy victims rather than to simply dispose of medical bills. *See* Art. 26A, § 1.

Plaintiff argues that under the "serious financial hardship" requirement, the VA would be forever precluded from a recovery. But, if it chose to do so, Maryland would be entitled under § 629(a)(1) to preclude the VA from any recovery whatsoever so long as it treated private health care providers in the same manner. In any event, the Maryland Act has no such preclusive effect but rather permits a recovery by both federal and state hospitals if the serious financial hardship test can be met. There has been no showing here that the VA would never be entitled to recover under the Maryland Act. As the record in this case discloses, the VA has a system for debt collection which it employs in a small percentage of its cases. In those cases, the VA might very well be able to meet the statutory prerequisite of the Maryland statute.

This Court accordingly concludes that the United States is entitled to a recovery under § 629(a)(1) only to the extent that a private provider of medical care to such veteran "would be eligible" to receive payment for such care. § 629(a)(1). But a private hospital which had furnished medical care to these victimized veterans under the same circumstances as those present in this case would not be eligible to recover the costs of such care. The VA in this case has made no showing that either of these two victimized veterans would suffer serious financial hardship as a result of expenses incurred by the VA in providing them with medical care. Thus, the VA, like a private hospital, cannot recover under the facts of this case. Summary judgment will therefore be granted in favor of defendants.

## IV

### Conclusion

Plaintiff under § 629 has an independent right of recovery subrogated to the extent that a claim must arise under state law. In this case, therefore, plaintiff must demonstrate that a victim would suffer serious financial hardship in attempting to pay a bill for medical treatment. Since plaintiff cannot on the record here make such a showing, defendants' motion for summary judgment will be granted, and plaintiff's

---

**4.** The *State of California* and *State of Illinois* cases are likewise distinguishable. In California, unlike Maryland, the victim is permitted to assign his claim to a private hospital which may then be reimbursed. In the *State of Illinois* case, the Court merely remanded the VA claim to the state agency for consideration on its merits.

motion for summary judgment will be denied.