# HARFORD COUNTY, MARYLAND *v.* BOARD OF SUPERVISORS OF ELECTIONS OF HARFORD COUNTY ET AL.

[No. 49 (Adv.), September Term, 1974.]

*Decided June 20, 1974.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Richard A. Romine, Deputy County Attorney,* with whom were *William D. Hooper, Jr., County Attorney,* and *Robert A. Kreamer, Assistant County Attorney,* on the brief, for appellant.

No brief filed on behalf of appellees.

SMITH, J., delivered the opinion of the Court.

The people of Harford County, at the general election of 1972, approved charter government for that county. That charter, possibly to avoid some of the problems with which we were faced in *In re Legislative Districting*, 271 Md. 320, 317 A. 2d 477 (1974), provided for a commission to establish councilmanic districts. This commission was to be "composed of two members from each political party chosen from a list of five names submitted by the Central Committee of each political party which polled at least fifteen percent of the total vote cast for all candidates for the [County] Council in the immediately preceding regular election." The County Council by this same provision was to appoint one additional member of the Redistricting Commission (the Commission).[1] The Commission was to select its chairman. No person was to be eligible as a member of the Commission if he held "any elected office." It was provided in § 205 (b):

> "By October 1 of the year prior to the year in which redistricting is to be effective, the Commission shall prepare, publish, and make available a plan of Councilmanic districts and shall present that plan, together with a report explaining it, to the Council. The plan shall provide for Councilmanic districts that are compact, contiguous, and substantially equal in population. No less than fifteen calendar days and no more than thirty calendar days after receiving the plan of the Commission, the Council shall hold a public hearing on the plan. If within seventy calendar days following presentation of the Commission's plan no other law establishing or re-establishing the boundaries of the Councilmanic districts has

---

1. The charter provision is reminiscent of the proposal of the Constitutional Convention of Maryland in 1968 in which Article 3, § 3.05 provided for a redistricting commission composed of two members appointed by "the presiding officer and the minority leader of each house" and that "[t]he governor [should] appoint an additional member who [should] serve as chairman of the commission."

been enacted, then the plan, as submitted, shall become law."

The Commission was duly appointed. It submitted its report within the time specified in the charter. The County Council held the required public hearing. It did not "within seventy calendar days following presentation of the Commission's plan" enact any "other law establishing or re-establishing the boundaries of the Councilmanic districts." The Commission's plan became law on November 27, 1973.

Apparently, someone had misgivings relative to the proposal. Under date of November 30, pursuant to a request for "an opinion from the Department of Law as to whether or not the County Council ha[d] the power to rearrange and create election districts and precincts," the county attorney advised by letter that § 205 "does not preclude the County Council from rearranging and creating election districts and precincts pursuant to their powers granted by the Legislature of the State of Maryland at other times." [2] The opinion recognized "that a defensible argument [might] be advanced that the Charter provisions for redistricting are exclusive and precludes the Council from redistricting in any other manner than that as provided in Section 205 of the Charter." Accordingly, it was suggested that if a new plan were enacted, then "both plans [should] be submitted to the court for judicial review under Article 31A of the Annotated Code of Maryland."

The County Council did enact a new plan, one differing from that proposed by the Commission and which had become law. The Board of Supervisors of Elections of Harford County filed a bill for declaratory judgment under Maryland Code (1957) Art. 31A. Parties defendant named in the proceeding were Harford County (the County) and the two individuals who had filed for election to the County Council from an altered councilmanic district. The persons who were members of the Commission, identifying

---

2. It will be recognized that election districts and precincts might be rearranged without alteration of Councilmanic districts.

themselves as "residents, voters, and taxpayers of Harford County, Maryland and as such [with] a direct interest in the outcome of the . . . proceedings," moved to intervene in order that "the issues presented . . . [might] be adequately and properly tried." Leave was granted and they filed an answer alleging that the Harford County Council was "without authority to enact a law altering councilmanic districts except in accordance with the procedures set forth in Section 205."

The trial judge (Close, J.) filed a comprehensive and well reasoned opinion in which he said:

"If the framers of the Charter had intended to allow the Council to redraw the district lines by means of an ordinary bill, they would have provided so. The procedure set forth was not done for idle reasons. It was clearly designed in a bipartisan fashion to prevent the unfortunate practice of 'gerrymandering' and the consequences which flow from it and to at least partially remove the important task of redefining Councilmanic districts from the field of partisan politics. Several protections are built into this procedure. All political parties of a certain size must be represented. No elected officials may serve on the commission. The plan must be submitted over one year prior to the next election. Public hearings must be held. Redistricting must be done every ten years, although there is nothing to indicate that it may not be done more often. It is true that the final decision on redistricting still rests with the Council, which is free to deal with the recommendations as it wishes within the seventy day period from the submission of the commission's report. They may either accept it or change it. This decision rightly rests in the hands of the duly elected members of the Council, who must start with the recommendations of a non-partisan panel of citizens.

"There is nothing to suggest that the procedure in

Section 205 was not followed exactly as prescribed. All reports were submitted in a timely fashion and public hearings were held. The Council had seventy days to act on the plan of the commission and they failed to do so.

"This Court therefore holds that the redistricting plan for the Councilmanic Districts prepared and submitted by the Commission on Redistricting became law and that Council Bill No. 73-67 is invalid and ineffective."

A declaratory decree to that effect was signed.

The County promptly appealed to the Court of Special Appeals. It then immediately filed a petition with us for the writ of certiorari, pointing out that the filing deadline for the coming councilmanic election is 9:00 p.m. on July 1, 1974, and that "great uncertainty [would] prevail in the Councilmanic elections of Harford County" until such time as we finally dispose of the matter. We granted the writ and advanced the case for argument. We shall here affirm the decision of the trial judge.

The County reasons that under § 101 of its charter the County is to "have all rights and powers of local self-government and home rule as are now or may hereafter be provided or necessarily implied by [that] Charter and by the Constitution and laws of the State of Maryland," and to have them "as completely as though they were specifically enumerated in [that] Charter and no enumeration of rights or powers in [that] Charter shall be deemed exclusive or restrictive"; that under Code Art. 25A, § 5 (A) the County has the power to "enact local laws for such county, including the power to repeal or amend local laws thereof enacted by the General Assembly upon the matters covered by the express powers" granted in Art. 25A; that under Art. 25A, § 5 (H) the County has power to "rearrange and create election districts and precincts"; that under Art. 25A, § 5 (S) the County has power "to pass all ordinances, resolutions or by-laws, not inconsistent with the provisions of [Art. 25A] or the laws of the State, as may be proper in executing and enforcing any of the powers enumerated in [§ 5] or

elsewhere in [Art. 25A], as well as such ordinances as may be deemed expedient in maintaining the peace, good government, health and welfare of the county"; and that under Maryland Constitution Art. XI-A, § 3 it is vested with full legislative power subject to the provisions of Art. 25A and to any existing or later enacted public general laws. It says "[g]ratification would not be afforded the purposes of home rule for the reasons which prompted it if the language of Section 5 (S) of Article 25A were not to be construed as a broad grant of power to legislate on matters not specifically enumerated in Article 25A and the language of that Section clearly indicates that such a construction is sound."

In *Anne Arundel County v. Moushabek*, 269 Md. 419, 306 A. 2d 517 (1973), we observed that a county charter "is to its legislative body as the Constitution of Maryland is to the General Assembly of Maryland." We quoted from *Legg v. Annapolis*, 42 Md. 203 (1875), where Judge Alvey said for the Court:

"A valid statute can only be passed in the manner prescribed by the Constitution, and when the provisions of that instrument, in regard to the manner of enacting laws, are wholly disregarded, in respect to a particular Act, it would seem to be a necessary conclusion that the Act, though having the forms of authenticity, must be declared to be a nullity. Otherwise the express mandatory provisions of the Constitution would be of no avail or force whatever." *Id.* at 221.

This Court has quoted many times from *Thomas v. Police Commissioner*, 211 Md. 357, 127 A. 2d 625 (1956), where Judge Hammond said for the Court:

"It is a hornbook rule of statutory construction that, in ascertaining the intention of the Legislature, all parts of a statute are to be read together to find the intention as to any one part and that all parts are to be reconciled and harmonized if possible. *Bickel v. Nice*, 173 Md. 1, 6; *Baltimore v. Deegan*, 163 Md. 234, 238; *Pittman v. Housing*

*Authority,* 180 Md. 457, 463; *Maguire v. State,* 192 Md. 615, 623; *Frazier v. Warfield,* 13 Md. 279, 301. A corollary rule of construction is that if there is no clear indication to the contrary and it is reasonably possible, a statute is to be read so that no word, clause, sentence or phrase shall be rendered surplusage, superfluous, meaningless or nugatory. This was stated negatively in *Pressman v. State Tax Commission,* 204 Md. 78, where it was noted that words in a statute may be rejected as surplusage if they are incapable of any sensible meaning or are repugnant to the rest of the statute and tend to nullify it." *Id.* at 361.

It is important to note that Art. 25A, § 5 sets forth a preamble to the various powers granted to the chartered counties. That preamble states that the "following enumerated express powers are . . . granted to and conferred upon any county or counties which shall [t]hereafter form a charter under the provisions of said Article 11A of the Constitution." What the County seems to have overlooked here is that it is the "county or counties" upon which the power is conferred, not the legislative body of the "county or counties." When the people of Harford County ratified this charter, the County was acting within the purview of Art. 25A, § 5.

It is not uncommon for people to write into their basic charter a restriction upon the powers of their legislative body. Our own Declaration of Rights prohibits poll taxes; specifies that paupers ought not to be assessed for the support of the government; that "sanguinary Laws ought to be avoided as far as it is consistent with the safety of the State"; that "no Law to inflict cruel and unusual pains and penalties ought to be made in any case, or at any time, hereafter"; that "no *ex post facto* Law ought to be made; nor any retrospective oath or restriction be imposed, or required"; that "no Law to attaint particular persons of treason or felony, ought to be made in any case, or at any time, hereafter"; and that "the Legislature [shall not] prescribe any other oath of office than the oath prescribed

by [the] Constitution," to mention but a few of the limitations written into the basic law of this State. In this charter, § 201 creates a legislative body of seven members. In § 217 (d) a quorum is set at four members. Nevertheless, if the council desires to legislate a change in compensation for its members, under § 208 "an affirmative vote of at least five members of the Council" is required. Moreover, although legislative bodies normally control the hour at which they convene, charter § 217 (c) provides that "[n]o session of the Council shall be scheduled earlier than six o'clock P.M. on any day unless authorized by an affirmative vote of at least five members of the Council."

The people of Harford County saw fit, in their wisdom, to place in their charter this provision for the creation of councilmanic districts. It must be assumed that they meant what they said. See *Prince George's Co. v. Beard*, 266 Md. 83, 91, 291 A. 2d 636 (1972). It certainly cannot be said that the Harford County Charter clearly spells out that the provisions of § 101 of that charter are in any way to override the provisions of § 205. If § 205 were not in the charter, then the council could, as Judge Close observed, "redistrict in any manner they wished, using any procedure they wished to establish, provided that both the procedure and the result were consistent with both Federal and State law and related sections of the Charter." The only way the charter can be construed so that "no word, clause, sentence or phrase shall be rendered surplusage, superfluous, meaningless or nugatory" is to conclude, as we do conclude, that the citizens of Harford County intended by the enactment of § 205 of their charter to restrict the County Council in enacting laws setting forth lines for councilmanic districts to the "seventy calendar days following presentation of the Commission's plan."

> *Decree affirmed; appellant to pay the costs; mandate to issue forthwith.*