504 A.2d 1140

**Robert C. MILLER**

v.

**Thomas R. PINTO et al.**

**No. 45, Sept. Term, 1985.**

Court of Appeals of Maryland.

Feb. 25, 1986.

Philip W. Hoon (Hoon & Barroll, on brief), Chestertown, for appellant.

James E. Thompson, Jr., Centreville, for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

MURPHY, Chief Judge.

The question presented is whether the Kent County Board of Appeals possesses the requisite statutory authority to make an original determination as to whether the existing use of certain property violates the Kent County Zoning Ordinance.

## I.

The parties to this appeal are neighbors whose common property line is also a boundary between zoning districts. Since the mid-1950s, Robert C. Miller has owned and resided at property located in an R–1 Single Family Residential

zoning district in the first election district of Kent County. In September 1982, Thomas R. Pinto and Jeanette L. Pinto purchased adjacent property located in a C–1 General Commercial zoning district. At all times relevant to this case, the Pintos' property was leased to TRP, Inc., a corporation owned by the Pintos. In their Agreed Statement of Facts, the parties characterize TRP's use of the property as "a trucking business."

Before purchasing their property, the Pintos applied to the Kent County Zoning Administrator for approval of the use TRP intended to make of the property. By letter dated August 20, 1982, the Zoning Administrator, after detailing TRP's proposed use of the property, expressly approved the use as conforming with the applicable provisions of the Zoning Ordinance. The Pintos placed a notice of the Zoning Administrator's decision in a single edition of a local weekly newspaper.

Miller asserts that, by early 1983, the noise, diesel fumes, and dust generated by TRP's activities on the property had become objectionable to him and to other of TRP's neighbors. In April 1983, Miller filed an application for a hearing before the Board of Appeals, seeking review of the Zoning Administrator's August 1982 letter. The matter was placed on the Board's docket as Appeal No. 360. On June 6, 1983, the Board granted Miller leave to amend his application within 30 days to correct a defect the nature of which is not disclosed in the record. Although the record also fails to disclose whether an amended application was ever filed, Appeal No. 360 was not further pursued by Miller and was ultimately dismissed by the Board of Appeals.

On March 5, 1984, Miller filed a second application with the Board of Appeals. In this application, which was docketed as Appeal No. 388, Miller requested that the Board make an independent, original determination of the legality of TRP's use of the property; assess appropriate sanctions against the Pintos and TRP for any violations of the Zoning Ordinance; and review the Zoning Administrator's decision

in his August 1982 letter that TRP's activities conformed with the applicable provisions of the Zoning Ordinance. The Pintos and TRP filed an objection alleging that the Board of Appeals lacked statutory authority to grant the relief requested by Miller.

In an opinion dated May 30, 1984, the Board of Appeals declined to review the Zoning Administrator's August 1982 letter, observing that, "[c]learly, the Appeal period has long since run for any alleged error on [the Zoning Administrator's] part to be reviewed." The Board also acknowledged that it lacked statutory authority to impose sanctions against violators of the Zoning Ordinance. The Board proceeded, however, to conduct evidentiary hearings to determine the nature of TRP's use of the property.

During the hearings, the Board heard extensive testimony regarding the nature and intensity of TRP's activities, and reviewed photographs of the property and the surrounding neighborhood. Based upon the evidence introduced at these hearings, the Board determined that "[t]he present use of the subject property by Mr. Pinto is not such as is compatible within a C–1 zoning district." The Board further found that "T.R.P.'s operation is tantamount to a 'truck and transfer terminal', said use being a specifically enumerated permitted use in an LI–2 District (see Section 9.2 of the Ordinance)." In light of these findings, the Board concluded that "the use of the subject property ... [violated] the Kent County Zoning Ordinance."

The Pintos and TRP appealed to the Circuit Court for Kent County. The circuit court (Rasin, J.) concluded that the Board had based its authority on either paragraph 4 or 5 of Article 13, § 3, of the Zoning Ordinance. Observing that it viewed Maryland Code (1957, 1983 Repl.Vol.) Art. 66B, § 4.07(d), as the sole source of Kent County's authority to enact zoning ordinances, the court held paragraphs 4 and 5 invalid as exceeding the authority granted by Article 66B, § 4.07(d), of the Code. The court therefore reversed

the Board of Appeals' determination as having been issued without statutory authority.

Miller appealed to the Court of Special Appeals and we issued a writ of certiorari on our own motion, before consideration of the case by the intermediate appellate court, to consider the important issue raised in the case.

## II.

The powers of a board of appeals in a code home rule county, such as Kent County,[1] are derived ultimately from two sources within the Maryland Code: § 4.07(d) of Article 66B, which is part of the enabling legislation for zoning and planning regulation in nonchartered counties;[2] and § 13 of Article 25B, which is part of the general enabling legislation for code counties. Section 4.07(d) of Article 66B provides authority for a board of appeals

"(1) To hear and decide appeals where it is alleged there is error in any order, requirement, decision, or determination made by an administrative official in the enforcement of this article or of any ordinance adopted pursuant thereto.

(2) To hear and decide special exceptions to the terms of the ordinance upon which such board is required to pass under such ordinances.

(3) To authorize upon appeal in specific cases a variance from the terms of the ordinance."

Section 13 of Article 25B incorporates by reference certain powers enumerated in § 5 of Article 25A, including those in § 5(U). Section 5(U) provides authority for a board of appeals to render a decision

---

1. On July 21, 1970, Kent County adopted code home rule status as authorized by Article XI–F of the Maryland Constitution and Article 25B of the Maryland Code.

2. Section 7.03 of Article 66B provides that, subject to an exception not here relevant, "nothing contained in this article shall apply to the chartered counties of Maryland."

"on petition by any interested person and after notice and opportunity for hearing and on the basis of the record before the board, of such of the following matters arising (either originally or on review of the action of an administrative officer or agency) under any law, ordinance, or regulation of, or subject to amendment or repeal by, the [local legislative body], as shall be specified from time to time by such local laws enacted under this subsection: An application for a zoning variation or exception or amendment of a zoning ordinance map; the issuance, renewal, denial, revocation, suspension, annulment, or modification of any license, permit, approval, exemption, waiver, certificate, registration, or other form of permission or of any adjudicatory order; and the assessment of any special benefit tax...."

■ That the General Assembly intended to provide boards of appeal in code counties with the powers authorized by § 13 of Article 25B in addition to those authorized by § 4.07(d) of Article 66B is, we think, manifest. Section 13 of Article 25B expressly states that the powers it authorizes "are in addition to any powers any county may now have under any public general or local law applicable to the county." Since § 4.07(d) of Article 66B antedates § 13 of Article 25B by 34 years, the quoted language from § 13 clearly mandates that the powers authorized in both statutory provisions are available to boards of appeal in code counties.[3]

■ The Pintos maintain that "Kent County by its actions has obviously opted to appoint its Board of Appeals (Board of Zoning Appeals) under Article 66B, Section 4.07, and is thus subject to its constraints." The Pintos, however, do not specify what actions by Kent County constitute this claimed election of Article 66B, § 4.07, in lieu of Article 25B, § 13. In any event, there is nothing before us to

---

3. The precursor of § 4.07(d) of Article 66B was enacted by chapter 599, § 13, of the Acts of 1933. Section 13 of Article 25B was enacted by chapter 650 of the Acts of 1967.

demonstrate that Kent County has precluded itself in some way from invoking powers authorized by the General Assembly under Article 25B. Of course, a county need not avail itself of all the powers enumerated in these two public general laws, but its decision to forego certain powers in no way affects the applicability of the state enabling legislation.[4]

The Pintos also suggest that, because § 4.07(b) of Article 66B contains a provision setting the salaries of the members of the Kent County Board of Appeals, the General Assembly must have intended that only § 4.07(d) of Article 66B, and not § 13 of Article 25B, apply to Kent County. We do not think the inclusion of this provision in Article 66B warrants such an inference. A far more probative guide to legislative purpose is the express mandate in § 13 of Article 25B, quoted previously, that the powers there authorized are in addition to those provided code counties by other statutes.

■ Neither Article 66B nor 25B grants power directly to a county board of appeals. Rather, these articles authorize

---

4. Although the local legislative body in a code county is required to enact local laws authorizing the county's board of appeals to exercise the powers provided by § 4.07(d) of Article 66B, it is not required to authorize the exercise of any of the powers provided by § 13 of Article 25B. Section 4.07(d) states that "[t]he board of appeals *shall* have the following powers" (emphasis added), and this mandatory language requires that the local legislative body implement these measures. *Cf. Board of County Comm'rs v. Gaster,* 285 Md. 233, 242, 401 A.2d 666 (1979) (provision in § 4.07(a) of Article 66B that "[t]he local legislative body shall provide for the appointment of a board of appeals" held to be mandatory). Section 13 of Article 25B, on the other hand, states that "a county ... *may* exercise" the powers provided by this section (emphasis added), and this permissive language leaves to the discretion of the local legislative body the choice as to which, if any, of these powers will be vested in the board of appeals. *See generally Bright v. Unsat. C. & J. Fund Bd.,* 275 Md. 165, 169–70, 338 A.2d 248 (1975) (absent clear indication of contrary legislative purpose, "shall" is presumed to be used in mandatory sense); *Planning Comm. v. Silkor Corp.,* 246 Md. 516, 522–24, 229 A.2d 135 (1967) (absent clear indication of contrary legislative purpose, "may" is presumed to be used in permissive sense); 2A N. Singer, *Sutherland on Statutes and Statutory Construction* § 57.03 (rev. 4th ed. 1984).

the local legislative body to enact local laws vesting in a board of appeals all or some of the powers provided in the enabling legislation.[5] In a code county, the county commissioners are the local legislative body. *See* Md. Const. art. XI–F; Maryland Code, Art. 25B, §§ 8–10. Thus, in determining whether the Kent County Board of Appeals possessed the requisite statutory authority to conduct hearings regarding TRP's use of the subject property and to issue a determination as to the legality of TRP's activities, we must first determine whether the Zoning Ordinance enacted by the County Commissioners of Kent County purports to vest these powers in the Board of Appeals.

The powers of the Kent County Board of Appeals are enumerated in Article 13, § 3, of the Zoning Ordinance:

"1. To hear and decide appeals where it is alleged there is error in any order, requirement, decision or determination made by an administrative official in the administration or enforcement of this Ordinance.

2. To hear and decide applications for special exceptions and conditional uses upon which the Board is specifically authorized to pass under this Ordinance.

3. To authorize upon appeal in specific cases such variance from the terms of this Ordinance as will not be

---

**5.** Strictly speaking, although § 4.07 of Article 66B vests authority directly in the local legislative body, § 13 of Article 25B and § 5 of Article 25A vest authority in the county. Thus, in applying § 5 of Article 25A in *Harford County v. Board,* 272 Md. 33, 321 A.2d 151 (1974), we emphasized that "it is the 'county or counties' upon which the power is conferred, not the legislative body of the 'county or counties.'" 272 Md. at 39, 321 A.2d 151. In a chartered county, such as Harford County, this distinction is significant, since the authority of the local legislative body in a chartered county is prescribed by the county charter, which is adopted by the citizens of the county, just as the authority of the General Assembly is prescribed by the Maryland Constitution. *See County Exec., Prince Geo's Co. v. Doe,* 291 Md. 676, 680, 436 A.2d 459 (1981); *Ritchmount Partnership v. Board,* 283 Md. 48, 62–64, 388 A.2d 523 (1978); *Harford County v. Board, supra,* 272 Md. at 38–40, 321 A.2d 151. In a code county, however, the distinction is of little importance, since once the citizens of the county have voted to adopt code home rule status the authority of the local legislative body is prescribed by state statute. *See* Art. 25B, §§ 8–10.

contrary to the public interest, where owing to special conditions, the enforcement of the provisions of this Ordinance will result in unwarranted hardship and injustice, but which will most nearly accomplish the purpose and intent of this Ordinance.

4. To hear and decide applications for interpretations of the Zoning District Map where there is any uncertainty as to the location of a district boundary.

5. To make a determination, in cases of uncertainty, of the district classification of any use not specifically named in these regulations; provided, however such use shall be in keeping with uses specifically permitted in the districts in which such use is to be classified."

Miller concedes, as he must, that paragraphs 1 through 4 are here inapplicable. The appeal period to which the Board of Appeals alluded in its opinion is set forth in Article 13, § 2, of the Zoning Ordinance, and requires that an appeal from a decision of the Zoning Administrator be initiated within 30 days. Since the 30-day period had expired long before Miller filed an application for review of the Zoning Administrator's August 1982 letter, Miller is now precluded from proceeding under paragraph 1. Paragraphs 2, 3, and 4 are inapplicable because they deal with matters not relevant to this case: special exceptions, conditional uses, variances, and interpretations of the Zoning District Map. If the Board of Appeals possessed the requisite authority to exercise the power it did in this case, therefore, it was by reason of paragraph 5.

The Board based its determination regarding the legality of TRP's use of the property upon its finding that TRP's use was more analogous to a "truck and transfer terminal," a use specifically permitted in an LI–2 Light Industrial district, than to any of the uses specifically permitted in a C–1 district. The substance of the Board's determination was that TRP's use should be classified as permitted only in an LI–2 district. We conclude, therefore, that the Board's

issuance of its determination was authorized by paragraph 5, which permits the Board "[t]o make a determination, in cases of uncertainty, of the district classification of any use not specifically named" in the Zoning Ordinance.

■ Although paragraph 5 does not expressly provide for evidentiary hearings, Article 13, § 2, of the Zoning Ordinance requires the secretary of the Board to advertise hearings regarding applications for interpretation by the Board and to provide notice of such hearings to parties in interest. This provision contemplates that the Board may conduct evidentiary hearings under paragraph 5 as a necessary incident to reaching its determination. It is, of course, well settled that a board of appeals possesses all powers implicit in those expressly granted to it. *See Zoning Appeals Board v. McKinney,* 174 Md. 551, 562, 199 A. 540 (1938). *Cf.* 3 R. Anderson, *American Law of Zoning,* § 20.17 (2d ed. 1977) (board of appeals must conduct hearing before deciding any matter that falls within either its original or appellate jurisdiction).

In addition to being authorized by local ordinance, the Board's actions also fall within the broad scope of § 5(U) of Article 25A. As noted earlier, § 5(U) authorizes a board of appeals to render a decision

"on petition by any interested person and after notice and opportunity for hearing and on the basis of the record before the board, of such of the following matters arising (either originally or on review ...) under any ... ordinance ... of ... the [local legislative body], as shall be specified from time to time by such local laws enacted under this subsection: ... the issuance, renewal, denial, revocation, suspension, annulment, or modification of any license, permit, approval, exemption, waiver, certificate, registration, or other form of permission...."

Because the Board possessed the requisite authority to issue its determination regarding the legality of TRP's use of the property, the circuit court erred in concluding that the Board issued its determination without statutory au-

thority. It will thus be necessary for the circuit court, on remand of the case, to consider the merits of the Pintos' appeal from the Board's determination that the Pintos' existing use of the property violated the Zoning Ordinance.

JUDGMENT VACATED; CASE REMANDED TO THE CIRCUIT COURT FOR KENT COUNTY FOR FURTHER PROCEEDINGS IN CONFORMITY WITH THIS OPINION; COSTS TO ABIDE THE FINAL RESULT.