610 A.2d 314

The WHARF AT HANDY'S POINT, INC.

v.

DEPARTMENT OF NATURAL RESOURCES, et al.

No. 742, Sept. Term, 1991.

Court of Special Appeals of Maryland.

May 27, 1992.

Reconsideration Denied June 30, 1992.

Robert J. Carson (Debra B. Adler, Smith, Somerville & Case, Baltimore, and C. Daniel Saunders, Chestertown, on the brief), for appellant.

Thomas A. Deming, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Marianne D. Mason and George E.H. Gay, Asst. Attys. Gen., on the brief), Annapolis, for appellees.

Argued Before ALPERT, FISCHER and MOTZ, JJ.

MOTZ, Judge.

This case was treated by the parties as one involving important issues concerning the power and authority of the Chesapeake Bay Critical Area Commission ("Critical Area Commission") to appeal an order of a local planning commission directly to the circuit court and the construction and constitutionality of a recently enacted state statute, Section 8–1812 of the Natural Resources Article. In fact, these

interesting questions are of only academic concern. At the time the Critical Area Commission appealed directly to the circuit court, another statute clearly controlled appeals from the planning commission's orders and provided an administrative remedy which the Critical Area Commission failed to exhaust prior to its appeal to the circuit court. After the issuance of the order of the Circuit Court and entry of the notice of appeal, the Kent County Zoning Ordinance was amended to provide for direct appeal to the Circuit Court from orders of the Planning Commission. The amended ordinance does not apply retroactively, but it does make remand for failure to exhaust administrative remedies pointless. Accordingly, we affirm the judgment of the Circuit Court for Kent County, albeit for reasons different than those relied upon below.

(i)

By the early 1980s, the Chesapeake Bay was a natural resource in rapid decline. As found by the General Assembly:

\* \* \* \* \* \*

(2) The shoreline and adjacent lands constitute a valuable, fragile, and sensitive part of this estuarine system, where human activity can have a particularly immediate and adverse impact on water quality and natural habitats;
(3) The capacity of these shoreline and adjacent lands to withstand the continuing demands upon shoreline and adjacent lands without further degradation to water quality and natural habitats is limited;

\* \* \* \* \* \*

(5) Those portions of the Chesapeake Bay and its tributaries within Maryland are particularly stressed by the continuing population growth and development activity concentrated in the Baltimore–Washington metropolitan corridor;
(6) The quality of life for the citizens of Maryland is enhanced through the restoration of the quality and pro-

ductivity of the waters of the Chesapeake Bay and its tributaries;

(7) The restoration of the Chesapeake Bay and its tributaries is dependent, in part, *on minimizing further adverse impacts to the water quality and natural habitats of the shoreline* and adjacent lands; [and]

(8) The cumulative impact of current development is inimical to these purposes.

Section 8–1801(a) (emphasis added).[1] Accordingly, the General Assembly enacted the Chesapeake Bay Critical Area Protection Program:

(1) To establish a Resource Protection Program for the Chesapeake Bay and its tributaries by fostering more sensitive development activity for certain shoreline areas so as to *minimize damage to water quality and natural habitats;* and

(2) To implement the Resource Protection Program on a cooperative basis between the State and affected local governments, *with local governments establishing and implementing their programs in a consistent and uniform manner subject to State criteria and oversight.*

Section 8–1801(b) (emphasis added). To establish the cooperative local/state relationship, to address the many environmental problems it had identified, and to implement a wide ranging Resource Protection Program, in 1984 the General Assembly created a new State agency, the Critical Area Commission, and specifically assigned responsibilities to it and to local governments. Section 8–1803. Local jurisdictions were assigned "primary responsibility for developing and implementing a program, subject to review and approval by the [Critical Area] Commission."

The Critical Area Commission was directed in § 8–1808(d) to develop "criteria for program development and approval which are necessary or appropriate to achieve the standards

---

**1.** All statutory references in sections i and ii of this opinion are to Md.Nat.Res.Code Ann. (1990 Repl.Vol. & 1991 Cum.Supp.), unless expressly noted to the contrary.

stated in [§ 8–1808(b) ]." The Commission developed these criteria after 16 public hearings, 16 Commission meetings, and 48 subcommittee meetings. *See* Gerald Winegrad, *The Critical Area Legislation: A Necessary Step to Restore the Chesapeake Bay,* 17 University of Baltimore Law Forum 3 (1986) ("Winegrad"). The criteria promulgated by the Critical Area Commission were subject to approval by the General Assembly. 1984 Md.Laws Ch. 794, § 3. This was given in the 1986 session in the form of Joint Resolutions 36 and 37; the criteria became effective on May 13, 1986 and are found at Md.Regs.Code ("COMAR") title 14, § 15.01 *et seq.* (1979) ("criteria"). Under the blueprint for program development set forth in § 8–1809(a) of the Natural Resources Article, a local jurisdiction then had the option to develop a program. If a county "fails to adopt and implement an approved program," however, the Commission "may act for the county in doing so." Winegrad at 4. Almost all local jurisdictions, including Kent County, elected to develop a program. By necessity, many of these programs, including Kent County's, closely mirrored and, in some respects, were identical to the criteria.

Kent County's local critical area program was approved by the Critical Area Commission on January 20, 1988 and became effective on April 12, 1988; it is incorporated into Kent County's current zoning ordinance ("Ordinance") which was adopted by the Kent County Commissioners on August 1, 1989 and amended December 5, 1989. The Ordinance requires that development undergo site plan review before it is undertaken. Ordinance, Art. VI, § 4.1.1. Such review is required to "ensure that new development complies with all *Comprehensive Plan,* Zoning Ordinance, and agency requirements thereby promoting the health, safety and general welfare of Kent County residents." Ordinance, Art. VI, § 4 (emphasis in original). One of the principal concerns is "the protection of historic and natural environmental features on the site under review, and in adjacent areas." Ordinance, Art. VI, § 4.2.3.d.

The process for plan review is set forth in the Ordinance as follows:

The following agencies will review plans according to their specified area of responsibility only.

—Planning Office

—Planning Commission

—County Roads and/or State Highway Administration

—Soil Conservation Service

—Health Department

—Critical Area Commission

—Any other State or local agency as requested by the Planning Director

Ordinance, Art. VI, § 4.2.2. Thus, the Critical Area Commission's plan review addresses *only* issues such as the Critical Area Buffer preservation, compliance with the local critical area program, and the natural environmental features of a site as they affect the Chesapeake Bay. In contrast, the Planning Commission's plan review must address *only* those issues that relate to the County's Comprehensive Plan. As clearly provided in the Ordinance, a reviewing agency may not stray from its field of expertise. The Ordinance provides explicitly that reviewing agencies shall review site plans according to their *"specified area of responsibility only."* Ordinance, Art. VI, § 4.2.2 (emphasis added).

Before site plan approval is granted it must be determined "that the activity meets all required environmental standards." Ordinance, Art. VI, § 4.3.F.10. Article X, § 1.3 of the Ordinance provides: "the word 'shall' is always mandatory. The word 'may' is permissive." Accordingly, certain mandatory standards may not be waived.

(ii)

The Wharf at Handy's Point, appellant herein ("the Wharf"), owns approximately 4.6 acres in Kent County which has been, or is intended to be, developed by the Wharf as part of its marina complex. All of the property is located entirely within the Chesapeake Bay Critical Area

and the sensitive Critical Area Buffer. A 54 slip, full-service marina, complete with parking, boat storage, and travel lift, exists on the northern half of this property; the southern half is at present undeveloped. On May 7, 1990, the Wharf submitted an application to the Kent County Planning Commission ("Planning Commission") for a boat storage facility and an additional parking area on the southern half of this property.

In a letter to the Kent County Planning Office dated May 25, 1990, Mr. Ren Serey, Chief of the Critical Area Commission's Project Evaluation Division at the time, detailed the numerous reasons why the Commission objected to the Wharf's application. For example, Mr. Serey asserted that the project "would severely impact sensitive portions" of the Critical Area Buffer, a designated habitat protection area, by permitting development not necessarily associated with water development facilities; improperly disturb steep slopes; remove all trees in a two-acre area, possibly adversely impacting a forest interior dwelling, bird habitat, etc., all in violation of the State's Critical Area Criteria and Kent County's Local Program. These objections were repeatedly reiterated by a Critical Area Commission staff planner. Moreover, a conservationist at the Maryland Soil Conservation Service and the staff of the Kent County Planning Office itself recommended denial of the application for many of the same reasons.

Nevertheless, on August 2, 1990, the Planning Commission granted preliminary approval of the Wharf's site plan. The application was re-evaluated by the Critical Area Commission; it continued to recommend denial of the approval. Despite the continuing objections of the Critical Area Commission, the Planning Commission issued final site plan approval on October 4, 1990.

The Chairman of the Critical Area Commission appealed this decision to the Circuit Court for Kent County.[2] The Wharf moved to dismiss the appeal on the ground that the Chairman had no statutory right to appeal and so the circuit court lacked jurisdiction. On October 11, 1990, the Circuit Court denied the motion to dismiss, finding that § 8–1812 gave the Chairman a statutory right of appeal. Two months later, on December 10, 1990, the lower court remanded the matter to the Planning Commission with instructions that it review the application, consider any new evidence, and render specific findings of fact. The Chairman of the Critical Area Commission again outlined to the Planning Commission in detail the Critical Area Commission's numerous continuing objections to the project. Several other interested state and local governmental units and private parties also submitted comments to the Planning Commission in support of the position of the Critical Area Commission. On January 3, 1991, the Planning Commission, after a public hearing on the matter, made specific findings of fact as directed by the circuit court. The Planning Commission then voted again to approve the final site plan for the Wharf.

On January 9, 1991, the Chairman of the Critical Area Commission appealed the Planning Commission's action to the circuit court. The Wharf moved to dismiss this appeal on the same ground that it moved to dismiss the initial appeal and the additional ground that if the Chairman had a right to appeal granted no other party, this would raise "significant" constitutional questions. After denying the motion to dismiss on March 20, 1991, the circuit court issued a Memorandum Opinion and Order reversing the Planning Commission's grant of final site plan approval and finding that the Kent County Ordinance and § 8–1811(a) of the Natural Resources Article are "mandatory and all encompassing. Their effect is that a project cannot be approved

---

**2.** The Chairman did not appeal or attempt to appeal the Planning Commission's decision approving the site plan to the Kent County Board of Appeals.

unless it meets *all* criteria. The project in question here has failed to do so in several respects." (emphasis in original.)

### (iii)

On appeal, the Wharf did not, in any way, contest the correctness of the circuit court's March 20, 1991 Memorandum Opinion and Order on the merits. Rather, it only raised the following two issues as to the Critical Area Commission's right to appeal to the circuit court:

1. Whether the circuit court had jurisdiction over the Critical Area Commission's[3] appeal of the Planning Commission's site plan approval for the Wharf when the Critical Area Commission has no statutory right to appeal.

2. If the circuit court had jurisdiction over the Critical Area Commission's appeal, whether this right to appeal would be unconstitutional as a result of being unilateral.

In its brief, the Critical Area Commission similarly addressed only these questions.

The parties focused their attention on § 8–1812 of the Natural Resources Article, which provides in pertinent part:

(a) *In general.*—After the [Critical Area] Commission has approved or adopted a program, the chairman of the Commission has standing and the right and authority to initiate or intervene in any administrative, judicial, or other original proceeding or appeal in this State concerning a project approval in the Chesapeake Bay Critical Area....

*    *    *    *    *    *

---

**3.** The Wharf ignores the fact that the statute provides a right to appeal to the *Chairman* of the Critical Areas Commission, not to the Commission itself. This difference is, however, of no significance here.

(c) *Appeal authorized.*—The chairman may appeal an action or decision even if the chairman was not a party to or is not specifically aggrieved by the action or decision.

The Critical Area Commission argued, and the circuit court found, that this statute provided the Critical Area Commission the right to appeal a planning commission decision directly to the circuit court. The Wharf argued that this statute provided the Critical Area Commission no such right. Critical to the position of both sides was agreement on the premise that, *if* § 8–1812 did not give the Critical Area Commission this power, then neither the Critical Area Commission, nor any other party, had the power to appeal decisions of a county planning commission. This was so, the parties believed, because the Kent County Zoning Ordinance did not provide for direct appeal to the Circuit Court from decisions of the Planning Commission. *See* Md.Ann. Code art. 66B, § 4.08(f).

This Court, however, became convinced that the parties' argument was grounded on a false premise, that they had totally ignored another state statute, which in fact provides all aggrieved parties the right to appeal planning commission orders. When the parties were questioned on this point at oral argument, they were surprised by the concept and not prepared to respond to it. Accordingly, in the interests of fairness, after oral argument, we requested that the parties brief and argue the following two questions:

1. Do Article 66B, § 4.07(d) of the Maryland Annotated Code and the Kent County Zoning Ordinance provide the Kent County Board of Appeals with the power to hear appeals from a decision of the county planning commission approving a site plan?

2. If so, must this administrative remedy be exhausted prior to any judicial review of the county planning board decision approving the site plan for the Wharf?

In their supplemental briefs and argument, the Wharf and the Critical Area Commission agreed that *if* the answer to the first of these questions is "yes," then the answer to

the second must also be "yes."[4]  That is, if Article 66B, § 4.07(d) and the Kent County Zoning Ordinance provide the Kent County Board of Appeals with the power to hear appeals from orders of the County Planning Commission approving a site plan, then the Critical Area Commission in failing to appeal to the Board of Appeals had failed to exhaust an administrative remedy.  Because "an administrative remedy must be invoked and exhausted before judicial relief is available," *Md.–Nat'l Cap. Park & Planning Comm. v. Crawford*, 307 Md. 1, 13, 511 A.2d 1079 (1986), reversal presumably would be required.[5]  Thus, the critical question before us would seem to be whether Article 66B, § 4.07(d) and the Kent County Zoning Ordinance provided the Kent County Board of Appeals with the power to hear an appeal from the order of the Planning Commission approving the Wharf's site plan.

(iv)

■ Article 66B, § 4.07(a) of the Maryland Annotated Code provides that: "The local legislative body shall provide for the appointment of a board of appeals."[6]  Section 4.07(d) provides:

---

**4.** It is clear that, if the answer to this second question is "yes," then the two questions raised and discussed in the original briefs are indeed moot.

**5.** The Critical Area Commission asserts that, if this Court concludes that an administrative remedy has not been exhausted, this "would mean that the Circuit Court had no jurisdiction to entertain appellee's appeal."  The Court of Appeals has rejected the view that failure to exhaust administrative remedies is jurisdictional, explaining: "the requirement that administrative remedies must be exhausted is not ordinarily a limitation upon the subject matter jurisdiction of the trial court.  But, because of the public policy underlying this requirement, it is for some purposes treated *like* a jurisdictional issue." *Md.–Nat'l Cap. Park & Planning Comm., supra,* 307 Md. at 13–14, n. 4, 511 A.2d 1079 (emphasis added).

**6.** Notwithstanding this all-inclusive language, the provisions of Article 66B do not generally apply to chartered counties.  *See* Md.Ann.Code art. 66B, § 7.03.  Instead, chartered counties obtain their zoning powers from the Express Powers Act, Md.Ann.Code art. 25A, § 5(S).

(d) *General powers.*—The board of appeals *shall* have the following powers:

(1) To hear and decide appeals where it is alleged there is error in any order, requirement, decision, or determination made by an administrative official in the enforcement of this article or of any ordinance adopted pursuant thereto.

(emphasis added.) In *Miller v. Pinto,* 305 Md. 396, 504 A.2d 1140 (1986), the Court of Appeals reiterated "[t]he local legislative body in a code county is required to enact local laws authorizing the county's board of appeals to exercise the powers provided in § 4.07(d) of Article 66B." 305 Md. at 403 n. 4, 504 A.2d 1140.

Pursuant to the authority granted to them in Article 66B, § 4.07(d), the County Commissioners of Kent County have provided in the Zoning Ordinance that the Board of Appeals shall have the power: "[t]o hear and decide appeals of any decision or determinations made by the *Administrator* in the enforcement and administration of this Ordinance." Ordinance, Art. IX, § 2.1 (emphasis in original). The Zoning Ordinance defines that "Administrator" as "[t]he Zoning Administrator of Kent County." Thus, as the Wharf candidly concedes, the import of the powers vested by the Zoning Ordinance in the Board of Appeals is "far from clear." That is, it is not clear whether a "decision" made by the "Administrator" is intended to include decisions made by the Planning Commission.

The parties agree, however, that regardless of what was intended by the County Commissioners in the Zoning Ordinance, Article 66B, § 4.07(d) controls here. *See Miller v. Pinto, supra,* 305 Md. at 403, 504 A.2d 1140 ("the local legislative body in a code county *is required* to enact local laws authorizing the county's board of appeals to exercise the powers provided in § 4.07(d)"); *Boulden v. Mayor,* 311 Md. 411, 535 A.2d 477 (1988) (local ordinance which directly of indirectly contravenes a public general law is invalid).

The Critical Area Commission maintains that § 4.07(d) does not provide the Board of Appeals with the power to decide appeals from the Planning Commission. Specifically, the Critical Area Commission, relying on the fact that § 4.07(d) only provides the Board of Appeals with the power to decide appeals from decisions of "an administrative official," argues that "an administrative official" should not be construed to include the multimember Planning Commission. Unfortunately for the Critical Area Commission, very similar arguments have been carefully considered and rejected by the Court of Appeals and the Commission's own counsel, the Attorney General.

At issue in *Howard Research v. Concerned Citizens*, 297 Md. 357, 466 A.2d 31 (1983), was the Howard County Code (1977) § 16.301, which provided that the Board of Appeals shall have the power to hear and decide appeals from determinations "made by any administrative official." 297 Md. at 365, 466 A.2d 31. The petitioners argued that § 16.301 "does not authorize an appeal from an action of the Planning Board because the Planning Board is an administrative agency composed of five members and, therefore, is not an 'administrative official.'" 297 Md. at 363, 466 A.2d 31. The Court of Appeals soundly rejected this argument. Relying on the fact that the Howard County Code expressly provided that "words used in the singular shall include the plural," Howard County Code § 16.106(4), the Court held that "the words 'administrative official' contained in § 16.301 mean administrative official or officials." 297 Md. at 366, 466 A.2d 31.

The Critical Area Commission's attempt to distinguish *Howard Research* and make an elaborate "legislative history" argument that § 4.07(d) should not be similarly interpreted, is based on the fact that Howard County is a charter county and Kent County is not. The Critical Area Commission argues that, "as to a county commissioner or code home rule county the term an 'administrative official' in § 4.07(d)(1) does not include the county's planning commission."

In 64 Op.Att'y Gen. 349, 355 n. 4 (1979), the Critical Area Commission's counsel, the Attorney General, opined to the contrary. There, the Attorney General construed § 4.07(d) in a situation involving Cecil County, which is not a charter county, but a county commissioner county, and concluded that:

> On the whole, we think the term "administrative official" is most reasonably read as embracing whatever administrative mechanism a local jurisdiction in Maryland sets up to enforce its planning and zoning laws and ordinances, including a multi-member body such as a local planning commission.

*Id.* The Attorney General, anticipating the Court of Appeals' reasoning in *Howard Research,* pointed out that:

> Article 1, § 8 of the Maryland Code provides that, in interpreting statutes, "[t]he singular always includes the plural, and vice versa, except where such construction would be unreasonable."

*Id.* He also pointed out that:

> Courts in other states have construed statutory language similar to § 4.07(d)(1) ... to give boards of appeals or boards of adjustment jurisdiction to entertain appeals from actions of local planning commissions in some instances. *Ackerman v. City of Creve Coeur,* 553 S.W.2d 490, 493 (Mo.App.1977) (approval of development plans by planning and zoning commission appealable to board of adjustment); *Royal Atlanta Development Corp. v. Staffieri,* [236 Ga. 143], 223 S.E.2d 128, 130 (Ga.1976) (some planning commission actions appealable to county board of appeals, but not approval of planned unit development scheme).

*Id.* The Attorney General reaffirmed this conclusion in 1982. *See* 67 Op.Att'y Gen. 409, 413 (1982). The reasoning of the Court of Appeals in *Howard Research* and of the Attorney General in these opinions is persuasive.

Accordingly, we hold that the term "an administrative official" in § 4.07(d) includes the Kent County Planning

Commission. Thus, § 4.07(d) does provide the Kent County Board of Appeals with the power to hear appeals from orders of the Planning Commission, including the decision at issue here, approving the Wharf's site plan. The Critical Area Commission's failure to avail itself of this right to appeal the Planning Commission's order to the Board of Appeals means, of course, that the Critical Area Commission failed to exhaust its administrative remedies. Because administrative remedies must be exhausted before judicial relief is possible, reversal would seem to be required.

(v)

■ The Critical Area Commission, however, points out in its supplemental brief that, while this case was on appeal, the Kent County Zoning Ordinance was amended in June 1991 to provide:

Appeal—Within thirty days of the decision any person aggrieved by a decision of the Planning Commission or Planning Director may file a notice of appeal with the circuit court.[7]

Examination of the legislative history of this amendment reveals that the Kent County Planning Commission, at its November 1, 1990 meeting, unanimously voted to recommend this amendment to the County Commissioners. The Planning Commission did this in response to its attorney's recommendation that "the Circuit Court [presumably in the initial appeal to it of the case at hand] found that there is a 'right of appeal,' however it is not clear in the ordinance and this amendment will make the appeal process clearer." In a letter dated November 5, 1990, the Planning Commission recommended to the County Commissioners that it enact this amendment to the Zoning Ordinance. A bill containing

---

7. The Wharf has expressly conceded that "the Kent County Commissioners clearly have the authority ... to provide an appeal" directly to the circuit court "from Planning Commission site plan review." *See* Md.Ann.Code art. 66B, § 4.08(f). Thus, the Wharf makes no argument that the June 1991 amendment to the Zoning Ordinance is not authorized by state law.

this amendment was introduced by the President of the Board of County Commissioners on May 7, 1991. After a public hearing on May 28, 1991, the amendment was enacted on June 4, 1991 to "become effective upon approval by the Critical Area Commission." The Critical Area Commission apparently approved it on June 14, 1991. Thus, there is nothing in the legislative history of the amendment specifically indicating whether it is to apply retroactively or prospectively.

The parties agree that this amendment works a change in procedural law. *See Mraz v. County Commissioners*, 291 Md. 81, 90, 433 A.2d 771 (1981); *County Commissioners v. Stephans*, 286 Md. 384, 397, 408 A.2d 1017 (1979).[8] It is well-established that, when no contrary legislative intention is expressed, "a statute governing procedure or remedy will be applied to cases pending when the statute becomes effective." *WSSC v. Riverdale Fire Co.*, 308 Md. 556, 564,

---

**8.** At oral argument, counsel for the Critical Area Commission conceded, in response to questions from the Court, that if the Court should find, as we have in section iv above, that it was clear that an administrative remedy had to be exhausted before the circuit court could hear the Commission's appeal, this amendment would not provide the circuit court with *ex post facto* power to hear the direct appeal. In light of this concession, it is difficult to understand precisely what the Critical Area Commission's claim is as to the effect of the Zoning Ordinance amendment. The only clue is the Critical Area Commission's citation to "*Enviro–Gro v. Bockelmann*, 88 Md. App. 323, 337–341 [594 A.2d 1190] (1991), *citing Yorkdale v. Powell*, 237 Md. 121 [205 A.2d 269] (1964)." The proposition for which we cited *Yorkdale* in *Enviro–Gro* was that in zoning cases involving changes in *substantive* law, not affecting vested rights and absent a contrary legislative intent, a "change in the law after a decision below and before final decision by the appellate court will be applied by that Court." *Enviro–Gro*, 88 Md.App. at 339, 594 A.2d 1190 (*quoting Yorkdale*, 237 Md. at 124, 205 A.2d 269). We need not here reach the question of whether this portion of *Yorkdale* is still good law. *But see Washington Suburban Sanitary Comm'n v. Riverdale Heights Vol. Fire Co.*, 308 Md. 556, 565, 520 A.2d 1319 (1987) (specifically disapproving the very similar fourth rule in *Janda v. General Motors*, 237 Md. 161, 168, 205 A.2d 228 (1964)). This is so because *Yorkdale* is, in any event, inapplicable to the case at hand which involves a change in *procedural* rather than substantive law. *See Luxmanor Citizens Ass'n v. Burkart*, 266 Md. 631, 645, 296 A.2d 403 (1972).

520 A.2d 1319 (1987). *See also Starfish Condominium Ass'n v. Yorkridge Service Corp.*, 295 Md. 693, 705, 458 A.2d 805 (1983) ("ordinarily a change affecting procedure only, and not substantive rights made by statute ... applies to all actions ... whether accrued, pending or future, unless a contrary intention is expressed"); *Mraz v. County Commissioners*, 291 Md. 81, 90, 433 A.2d 771 (1981) (same); *Winston v. Winston*, 290 Md. 641, 650, 431 A.2d 1330 (1981) (same); *Aviles v. Eshelman Elec. Corp.*, 281 Md. 529, 533, 379 A.2d 1227 (1977) (same); *Holmes v. Criminal Injuries Comp. Bd.*, 278 Md. 60, 63 n. 2, 359 A.2d 84 (1976) ("legislative changes affecting only procedural rights generally apply to pending actions").

This does not mean, however, that a legislative change in circuit court procedure, enacted *after* a final circuit court order, is to be applied by an appellate court to change the procedural rules in the circuit court for that case. None of the cases cited above so holds. In none did the Court of Appeals even suggest that a legislative change which is made after an appeal from a final circuit court order has been perfected in any way affects the procedure in the circuit court in that case. Rather, the Court has merely held that the circuit court could and should apply changes in the procedural law when those changes become effective *while* a case is pending in the circuit court, *i.e.*, *before* there is a final circuit court decision. *See Starfish Condominium*, 295 Md. at 704, 458 A.2d 805; *Mraz*, 291 Md. at 85–86, 433 A.2d 771; *Winston*, 290 Md. at 649–50, 431 A.2d 1330; *Aviles*, 281 Md. at 533, 379 A.2d 1227; *Holmes*, 278 Md. at 63 n. 2, 359 A.2d 84.

In only one case, *Luxmanor Citizens Ass'n v. Burkart*, 266 Md. 631, 296 A.2d 403 (1972), has the Court of Appeals dealt with a situation factually similar to that involved here. There, a county ordinance was amended to provide that the votes of four, rather than three, members of a county board of appeals were needed in order to approve a zoning special exception. 266 Md. at 644, 296 A.2d 403. The appellees had been granted a special exception by the vote of only

three members of the board. Relying on a number of prior Court of Appeals decisions, appellants argued that "the decision of the Board of Appeals ... should be held ... void because of the provisions of the amendatory legislation." *Id.* The Court of Appeals found that this contention was "unsound" and not required by prior precedent. *Id.* The Court carefully pointed out that no prior case had held that amendatory legislation must be applied to invalidate a judicial or administrative decision made *before* the new legislation was enacted. 266 Md. at 645–46, 296 A.2d 403. The *Luxmanor* court expressly refused to hold that the newly amended ordinance "must be applied to invalidate a decision of the Board made some six and one-half months *prior* to its enactment." *Id.* at 645, 296 A.2d 403 (emphasis in original). Similarly, in *In re Michael W.*, 53 Md.App. 271, 452 A.2d 1278 (1982), we held that a change in the Maryland rules making "an order waiving juvenile jurisdiction ... interlocutory" would not be applied "to make an appeal improper when the appeal" was "perfected before the effective date of the change" in the rule. 53 Md.App. at 277, 452 A.2d 1278.

The rationale in *Luxmanor* and *In re Michael W.* is persuasive. Although the situation presented in those cases is not identical to that here,[9] we see no reason why the rule enunciated there is not applicable here. Accordingly, the June 1991 amendment to the Kent County Zoning Ordinance, which was enacted months *after* an appeal was noted from the March 10, 1991 circuit court order in this case, does not apply retroactively to give the Critical Area Commission the right to appeal directly to the circuit court. Ordinarily, we would remand this case to the Circuit Court for Kent County with instructions to remand it to the Planning Commission. *See Board of Education v. Hub-*

---

9. In *Luxmanor* and *In re Michael W.,* retroactive application of the amendatory legislation would have *invalidated* a judicial or administrative decision made prior to enactment of the amendment. Here, retroactive application of the amendatory legislation would *validate* a judicial decision made prior to enactment of the amendment.

*bard,* 305 Md. 774, 792, 506 A.2d 625 (1986) (when parties failed to exhaust administrative remedy, case is remanded to circuit court with instructions that parties then exhaust their administrative remedies).

█ We do not do so because of the peculiar circumstances of this case. To remand here would require the parties and the courts to engage in a time-consuming and costly process that would serve no purpose and would benefit no one. If we remanded, the Critical Area Commission would then exercise its rights, under the amended Zoning Ordinance, to appeal directly to the circuit court. (There is no question that the June 1991 amendment of the Zoning Ordinance would be applicable to this case after remand. *See WSSC v. Riverdale Fire Co.,* 308 Md. at 564, 520 A.2d 1319 and the cases cited therein.) [10] The Circuit Court would then be called upon to review precisely the same administrative record which it had already reviewed and so would be required to reverse the Planning Commission again. *See, e.g., Fertitta v. Brown,* 252 Md. 594, 251 A.2d 212 (1969) (circuit court's final judgment which denied relief from Zoning Commissioner's order that property owner cease using his property as a marina was binding adjudication on property owner who, like the Wharf here, did not appeal case on the merits). Thus, the parties would be back in precisely the same position; remand would have served no purpose.

---

**10.** The Zoning Ordinance provides that a "person aggrieved by a decision of the Planning Commission" must exercise this right to appeal directly to the circuit court within "thirty days of the decision." Here, however, the Critical Area Commission had no right to appeal to the circuit court at the time of the decision of the Planning Commission. Accordingly, it could hardly have availed itself of that right within thirty days of the Planning Commission's decision. In similar circumstances, it is well-established that "the period prescribed" (here thirty days) will be counted so that a party whose "rights accrued before passage" of the new legislation can have the "same time to bring his action as those whose rights accrued after the passage" of the new legislation. *Kelch v. Keehen,* 183 Md. 140, 147, 36 A.2d 544 (1944). *See also Rich v. City of Baltimore,* 265 Md. 647, 651–52, 290 A.2d 777 (1972).

It is well-recognized that, even if the judgment of the lower court is technically in error, it may be affirmed on appeal "if reversal would be ineffectual and of no benefit to the party seeking it, as where the same result would inevitably be reached a second time." 5B C.J.S.2d *Appeal & Error* § 852 at p. 290. *See, e.g., Mayor of City of Annapolis v. Harwood,* 32 Md. 471, 481 (1870) ("decree of the circuit court was error" which would require reversal and remand "if the appellants could be benefitted by any further proceedings that could be taken" but since "no further proceeding would change the final result" decree is affirmed); *Washington v. Williamson,* 23 Md. 233, 252 (1865); *Benson v. Atwood,* 13 Md. 20, 57 (1859).

JUDGMENT AFFIRMED.

COSTS TO BE PAID ONE HALF BY APPELLANT AND ONE HALF BY APPELLEE.